1   CALDWELL LESLIE & PROCTOR, PC
    LINDA M. BURROW, State Bar No. 194668
2     burrow@caldwell-leslie.com
    KELLY L. PERIGOE, State Bar No. 268872
3     perigoe@caldwell-leslie.com
    725 South Figueroa Street, 31st Floor
4   Los Angeles, California 90017-5524
    Telephone: (213) 629-9040
5   Facsimile: (213) 629-9022

6   Attorneys for Defendants DANIEL
    WILLIAM STRONG, LEE DANIELS,
7   IMAGINE TELEVISION, LLC,
    (erroneously sued as "IMAGINE
8   ENTERTAINMENT"), and TWENTIETH
    CENTURY FOX FILM CORPORATION
9   (erroneously sued as TWENTY-FIRST
    CENTURY FOX, INC.")

10
              UNITED STATES DISTRICT COURT
11
        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
12

13  JON ASTOR-WHITE,                      Case No. 15-cv-06326 PA (RAOx)

14          Plaintiff,                    NOTICE OF MOTION AND
                                          MOTION OF DEFENDANTS
15      v.                                DANIEL WILLIAM STRONG, LEE
                                          DANIELS, IMAGINE
16  DANIEL WILLIAM STRONG "aka"           TELEVISION, LLC, AND
    DANNY STRONG; LEE DANIELS;            TWENTIETH CENTURY FOX
17  IMAGINE ENTERTAINMENT;                FILM CORPORATION TO
    TWENTY-FIRST CENTURY FOX,             DISMISS FIRST AMENDED
18  INC.; and DOES I through X,           COMPLAINT WITH PREJUDICE
                                          PURSUANT TO FEDERAL RULE
19          Defendants.                   OF CIVIL PROCEDURE 12(B)(6);
                                          MEMORANDUM OF POINTS AND
20                                        AUTHORITIES

21                                        [Declaration of Kelly L. Perigoe;
                                          [Proposed] Order Re Motion to
22                                        Dismiss; Request for Judicial Notice;
                                          and [Proposed] Order filed
23                                        concurrently herewith]

24                                        The Honorable Percy Anderson

25                                        Date:        February 22, 2016
                                          Time:        1:30 p.m.
26                                        Courtroom:   15

27

28

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 22, 2016, at 1:30 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Percy Anderson, located in the United States Courthouse, 312 N. Spring Street, Los Angeles, CA 90012, Defendants Daniel William Strong, Lee Daniels, Imagine Television, LLC (erroneously sued as "Imagine Entertainment"), and Twentieth Century Fox Film Corporation (erroneously sued as "Twenty-First Century Fox, Inc.") (collectively, "Defendants") will and hereby do move this Court to dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the following grounds:

- Plaintiff's claim for copyright infringement fails because Plaintiff does not and cannot allege that the Defendants had access to his "Treatment" as required to state a claim for copyright infringement in the absence of direct evidence of copying.

- Plaintiff's claim for copyright infringement fails for the independent reason that Plaintiff's Treatment is not substantially similar to Defendants' television series, *Empire*, in a manner protected by copyright law.

- Because the defects in Plaintiff's FAC cannot be cured by amendment of the FAC, the FAC should be dismissed with prejudice.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Kelly L. Perigoe and Request for Judicial Notice and exhibits thereto filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Pursuant to Local Rule 7-3, counsel for Defendants spoke to counsel for Plaintiff regarding this Motion on December 2, 2015, but the parties were unable to

CALDWELL
LESLIE &
PROCTOR

-1-

resolve the issues presented in this Motion.  *See* Declaration of Kelly L. Perigoe, ¶ 2.  Counsel for Defendants contacted counsel for Plaintiff again on January 12, 2016, who confirmed that Plaintiff intended to stand by the allegations in his FAC. *Id.*, ¶ 3.

DATED:  January 18, 2016

CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW
KELLY L. PERIGOE


By  _____/s/_____
         LINDA M. BURROW
Attorneys for Defendants DANIEL WILLIAM STRONG, LEE DANIELS, IMAGINE TELEVISION, LLC, and TWENTIETH CENTURY FOX FILM CORPORATION

CALDWELL
LESLIE &
PROCTOR

-2-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1
2

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................. 2

    A.      Plaintiff's Treatment .................................................................. 2

    B.      The Empire Television Series ..................................................... 4

    C.      Plaintiff's Access Allegations .................................................... 6

III.    LEGAL STANDARD FOR RULE 12(b)(6) MOTION ................................. 7

IV.     PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE
    DISMISSED ........................................................................................ 7

    A.      Courts Routinely Dismiss Infringement Claims With Prejudice
        for Lack of Substantial Similarity When the Works are Before
        the Court ..................................................................................... 8

    B.      Plaintiff Fails to Allege Facts Showing Defendants Had Access
        to His Treatment ....................................................................... 10

    C.      Empire Is Not Substantially Similar to Plaintiff's Treatment ............ 12

        1.      Plot ................................................................................ 13

        2.      Sequence of Events ........................................................ 16

        3.      Theme ............................................................................ 18

        4.      Characters ...................................................................... 19

                (a)      Lucious and King are not Similar in Protected
                        Expression ................................................... 19

                (b)      Cookie Is not Similar in Protected Expression to any
                        Character in *King Solomon* .............................. 20

                (c)      King's Adult Children are Not Similar in Protected
                        Expression to Lucious's Three Sons .................. 21

        5.      Mood .............................................................................. 23

        6.      Setting ............................................................................ 24

        7.      Pace ............................................................................... 24

        8.      Dialogue ......................................................................... 24

CALDWELL
LESLIE &
PROCTOR

-i-

1

V.    LEAVE TO AMEND WOULD BE FUTILE ................................................... 25

2

VI.   CONCLUSION ............................................................................................. 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ................................................................ 10, 11, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 7

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ................................................................. 15, 19

*Benjamin v. Walt Disney Co.*,
  No. CV-05-228 GPS, 2007 WL 1655783 (C.D. Cal. June 5, 2007) ............. 18, 22

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ........................................................ 13, 14, 15, 23

*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................. 9

*Campbell v. Walt Disney Co.*,
  718 F.Supp.2d 1108 (N.D. Cal. 2010) ..................................................... 25

*Capcom Co., Ltd. v. MKR Grp., Inc.*,
  No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ................ 22-23

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ............................................................ 2, 16, 18

*Chase-Riboud v. Dreamworks, Inc.*,
  987 F.Supp. 1222 (C.D. Cal. 1997) ........................................................ 11-12

*Christianson v. West Publ'g Co.*,
  149 F.2d 202 (9th Cir. 1945) ................................................................. 8

*Dr. Seuss Enters., L .P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ................................................................. 12

*DuckHole Inc. v. NBC Universal Media LLC*,
  No. CV 12-10077 BRO, 2013 WL 5797279
  (C.D. Cal. Sept. 6, 2013) ....................................................................... 10

CALDWELL
LESLIE &
PROCTOR

-iii-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Dworkin v. Hustler Magazine, Inc.*,
  867 F.2d 1188 (9th Cir. 1989) .................................................................. 9

*Feist Publ'ns, Inc. v, Rural Tel. Serv. Co. Inc.*,
  499 U.S. 340 (1991) .................................................................................. 9

*Feldman v. Twentieth Century Fox Film Corp.*,
  723 F.Supp.2d 357 (D. Mass. 2010)........................................... 11, 19, 21

*Flynn v. Surnow*,
  No. CV 02-9058-JFW, 2003 WL 23411877
  (C.D. Cal. Dec. 9, 2003) .......................................................................... 19

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ........................................................ *passim*

*Gadh v. Spiegel*,
  No. CV 14-855-JFW, 2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ............... 8, 25

*Gilbert v. New Line Prods., Inc.*,
  No. CV 09-02231 RGK, 2009 WL 7422458
  (C.D. Cal. Nov. 16, 2009) ...................................................................... 9-10

*Idema v. Dreamworks, Inc.*,
  162 F.Supp.2d 1129 (C.D. Cal. 2001)............................................... 21, 24

*Iqbal v. Ashcroft*,
  556 U.S. 662 (2009) ................................................................................... 7

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ................................................................... 8

*Jason v. Fonda*,
  698 F.2d 966 (9th Cir. 1982) ............................................................. 10-11

*Kennedy v. Paramount Pictures Corp.*,
  No. 12CV372-WQH-WMC, 2013 WL 1285109
  (S.D. Cal. Mar. 27, 2013) .......................................................................... 9

*Kenney v. Warner Bros. Entm't Inc.*,
  984 F.Supp.2d 9 (D. Mass. 2013).......................................................... 12

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ............................................................. 13, 15

CALDWELL
LESLIE &
PROCTOR

-iv-
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Mandeville-Anthony v. Walt Disney Co.*,
No. CV 11-2137-VBF, 2012 WL 4017785 (C.D. Cal. July 28, 2012) ............9-10

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
586 F.Supp. 1346 (C.D. Cal. 1984) .......................................................... 11

*Murray Hill Publ'ns v. Twentieth Century Fox Film Corp.*,
361 F.3d 312 (6th Cir. 2004) ................................................................. 11

*Murray v. National Broad. Co.*,
671 F.Supp. 236 (S.D.N.Y. 1987), *aff'd*, 844 F.2d 988
(2d Cir. 1988), *abrogated on other grounds by Nadel v. Play-By-
Play Toys & Novelties*, 208 F.3d 368 (2d Cir. 2000) ........................................ 18

*Nelson v. PRN Prods., Inc.*,
873 F.2d 1141 (8th Cir. 1989) ................................................................8-9

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
590 F.Supp.2d 508 (S.D.N.Y. 2008) ...................................................... 12

*Olson v. National Broad. Co., Inc.*,
855 F.2d 1446 (9th Cir. 1988) .................................................... 19, 23, 24

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010) .................................................................... 8

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) .................................................... 22, 23, 24

*Schkeiban v. Cameron*,
566 F.App'x 616 (9th Cir. 2014) ............................................................ 8

*Seals-McClellan v. Dreamworks, Inc.*,
120 F.App'x 3 (9th Cir. 2004) ............................................................. 10

*Shame on You Prods., Inc. v. Banks*,
No. CV-14-03512-MMM, 2015 WL 4885221
(C.D. Cal. Aug. 14, 2015) ...........................................................*passim*

*Shaw v. Lindheim*,
919 F.2d 1353 (9th Cir. 1990) .............................................................. 12

*Smart Inventions, Inc. v. Allied Commc'ns. Corp.*,
94 F.Supp.2d 1060 (C.D. Cal. 2000) ...................................................... 12

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ................................................................. 8

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................... 2

*Thomas v. Walt Disney Co.*,
   337 F.App'x 694 (9th Cir. 2009) .......................................................... 10

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) .............................................................. 7-8

*Towler v. Sayles*,
   76 F.3d 579 (4th Cir. 1996) ............................................................ 11, 12

*UMG Recordings, Inc. v. Augusto*,
   628 F.3d 1175 (9th Cir. 2011) ............................................................... 8

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ................................................................. 7

*Wild v. NBC Universal*,
   513 F.App'x 640 (9th Cir. 2013) ........................................................... 8

*Willis v. Home Box Office*,
   No. 00 CIV 2500 (JSM), 2001 WL 1352916
   (S.D.N.Y. Nov. 2, 2001) ..................................................................... 18

*Zella v. E.W. Scripps Co.*,
   529 F.Supp.2d 1124 (C.D. Cal. 2007) .......................................... *passim*

**Statutes**

17 U.S.C. § 102(b) ...................................................................................... 12

17 U.S.C. § 501(a) ........................................................................................ 8

Fed. R. Civ. Proc. 12(b)(6) ................................................................. 7, 8, 9

Fed. R. Civ. Proc. 12(c) ................................................................................ 9

**Other Authorities**

4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.03[B][4]
   (Matthew Bender Rev. Ed.) ................................................................ 16

CALDWELL
LESLIE &
PROCTOR

-vi-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Jon Astor-White claims that the Defendants' television series *Empire* infringes his four-page "treatment" containing his idea for a mini-series titled *King Solomon* (the "Treatment").  Plaintiff's copyright claim fails because Plaintiff does not plead either access or substantial similarity in protectable expression and thus fails to state a copyright infringement claim.  Indeed, a comparison of Defendants' *Empire* and Plaintiff's Treatment (the "Works") reveals a clear lack of protectable similarities between Plaintiff's idea for a mini-series, which involves a Harvard-educated "Black Record Business Mogul" dealing with family and business conflicts, including an extortionist half-brother and a mob-backed rival record company, and *Empire*, which is the story of Lucious Lyon, a former drug dealer turned rapper and music mogul, who, as the series begins, has recently been diagnosed with a terminal disease, and his powerful ex-wife, Cookie, who battles Lucious for control of his music empire.  *Empire* also centers around Lucious and Cookie's three adult sons, one of whom is mentally ill, another is gay, and two of whom are pop and hip-hop stars in their own right, and the shifting alliances and feuds among the sons and between the sons and their parents.

Plaintiff's First Amended Complaint ("FAC") should be dismissed with prejudice for at least two reasons:

***First***, Plaintiff fails entirely to allege access.  Plaintiff alleges that he gave the Treatment to just three people, none of whom are Defendants:  actor Richard Roundtree (who is not in *Empire*); Roundtree's agent, who rejected the project on Roundtree's behalf; and a friend, who filed the Treatment away and showed it to no one.  Far from alleging a reasonable possibility that *Empire's* creators had an opportunity to view his Treatment, the FAC all but forecloses access to the Treatment by Defendants.

-1-

**Second**, Plaintiff's copyright claim should be dismissed—with prejudice—for the independent reason there is not a single protectable element in *Empire* that also appears in Plaintiff's Treatment. *Empire's* signature elements—the charismatic Cookie and her struggle to take control of the record company she co-founded before going to prison, Lucious's illness, the mental illness and inter-racial marriage of Andre, Lucious and Cookie's older son, and the struggles between Jamal, their middle son, who is gay, and Lucious, his homophobic father, among others—have no protected counterpart in Plaintiff's Treatment. Instead, the Treatment sets forth only the generic, broad, and unprotecable idea for a mini-series about a wealthy black family struggling to control its hip hop music business. It describes only one scene, contains no dialogue, and includes only a handful of thinly described characters, none of which is similar to any of *Empire's* protectable elements.

The purported similarities between these two Works are unprotectable story elements that naturally flow from any plot premise of the struggles within a wealthy family engaged in the hip hop music business, known as *scenes a faire*. Because the Works are before this Court (Plaintiff's Treatment was attached to the Complaint and *Empire* is incorporated by reference into the FAC) and properly considered on a motion to dismiss, and because no amended pleading could create substantial similarities between Plaintiff's Treatment and *Empire*, permitting Plaintiff to amend would be an exercise in futility. This Court should therefore dismiss Plaintiff's FAC with prejudice and without leave to amend.

## II.    FACTUAL BACKGROUND[1]

### A.    *Plaintiff's Treatment*

Plaintiff alleges that he created his Treatment in October 2007, FAC, ¶ 9, Ex.

---

[1] For the purposes of this Motion, Defendants accept as true the factual allegations in the FAC, except those that are flatly contradicted by judicially noticeable facts. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). For the record, Defendants vehemently deny Plaintiff's factual allegations.

A, and that he registered the Treatment with the United States Copyright Office on March 26, 2015.  FAC, Ex. C.  The Treatment, attached to the FAC as Exhibit A and part of the court record, consists of a title page, describing the work as a "One Hour Mini-Series Television Projection [*sic*]," a list of "Suggested Lead Actors/Actresses" (none of whom appear in *Empire*), and less than four pages actually describing the concept for *King Solomon*.  FAC, Ex. A.

According to the Treatment, *King Solomon* is the story of a "Black Record Business Mogul" named King Solomon ("King") and his family, and is set in present-day Hollywood with occasional flashbacks revealing King's rise to power. FAC, Ex. A-4.  The Treatment describes King as a Harvard graduate who started a small record label, Solomon Records, with one female singer and a band, growing the label into a billion dollar business.  *Id.*, A-4, A-6.  After King's first wife dies, he marries his "high school sweetheart and secretary," Janet.  *Id.*, A-4.  King and Janet have three children:  a son, Jack, a college graduate with a degree in business administration who looks to run the family business one day; a second son, Joe, whom King bans from the family estate after he drops out of college to become a hip-hop artist; and a daughter, Jenny, an aspiring actress and model.  *Id.*  After being cut off by his father, Joe becomes a hip hop artist and signs a record deal with Diamond Star Records, the rival to Solomon Records, which is run by King's nemesis, Jim Diamond, and is reportedly backed by West Coast mob boss, "Lucky Lou De Angelo."  *Id.*, A-4-5.  King also engages in "tough nego[t]iations with his mega-stars," who threaten to move to Diamond Star Records.  *Id.*, A-6.

King's half-brother, Jake, upon being released from prison where he served 20 years for drug possession, crashes a 21st birthday party that King throws for his daughter Jenny.  *Id.*, A-5.  Apparently sharing an unidentified "deep dark secret" with King, Jake demands King pay him "hush-money."  *Id.*  Unable to find legitimate work, Jake returns to a life of crime and drugs.  *Id.*  He meets a teenager who was abandoned by her mother and is living on the streets, "strung out on drugs

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1    and prostitution." *Id.*, A-6.  Jake then "learns almost too late . . . that she is his

2    daughter, born to his ex-girl friend [*sic*] (now deceased) while he was in prison." *Id.*

3           According to the Treatment, each episode of *King Solomon* will feature

4    performances from "actual recording stars appearing and performing their hits." *Id.*

5    Plaintiff describes the "look and feel" of *King Solomon* as the "style and elegance of

6    'Dynasty' meets 'The Sopranos' with a sprink[l]ing of 'The Godfather' blending, in

7    and out, for effect." *Id.*, Ex. A-7.

8         **B.     The Empire Television Series[2]**

9           *Empire* is the story of world-famous rapper Lucious Lyon ("Lucious") and his

10   ex-wife Cookie, a talented music producer, who as a young couple started Empire

11   Entertainment ("Empire"), a privately held music empire, which, as the series

12   begins, is on the verge of going public.  Request for Judicial Notice ("RJN"), Ex. A,

13   Ep. 1, 4:50-6:42.  Upon learning that he has Amyotrophic Lateral Sclerosis (ALS),

14   Lucious must decide which of their three adult sons will take over his entertainment

15   empire.  In a plot reminiscent of Shakespeare's *King Lear*, Lucious's three sons—

16   Andre, a married businessman with bipolar disorder; Jamal, a gay singer rejected by

17   the homophobic Lucious; and Hakeem, a talented but unfocused rapper—vie for

18   control of Empire.  *Id.*, Ep. 1, 6:43-8:05, 22:24-23:16, 34:36-35:26, 24:41-26:00;

19   Ep. 10, 0:53-3:49.  The three adult sons move between alliances and feuds with each

20   other and their parents.  Cookie's character is vividly drawn and controversial—

21   shortly after being released from prison she beats her adult son with a broom for

22   being disrespectful, *id.*, Ep. 1, 17:45-18:51—has an exceptionally sharp tongue,

23   distinctive fashion sense, and a regal way of carrying herself.  When Cookie is

24   released from prison after serving 17 years on drug charges, she becomes a powerful

25

26   [2] Because *Empire* is "referenced in—although not attached to—the amended
     complaint, [it is] incorporated by reference in it, and can be considered by the court
27   in assessing substantial similarity."  *Shame on You Prods., Inc. v. Banks*, No. CV-
     14-03512-MMM (JCx), 2015 WL 4885221, at *11 (C.D. Cal. Aug. 14, 2015).
28

1   figure in the series, as she demands half of the company she started with Lucious.

2   *Id.*, Ep. 1, 8:06-37, 14:52-56, 15:25-41.  She takes Jamal's side against Lucious,

3   who will not accept his homosexuality, and ultimately helps Jamal take control of

4   Empire.  *Id.*, Ep. 11, 46:58-47:24.  Conflict also arises between the blunt-spoken

5   Cookie and Lucious's fiancé, Anika, Empire's head of artists and repertoire (A&R).

6   *Id.*, Ep. 1, 16:35-17:13, Ep. 6, 2:43-3:33.

7        Empire's chief rival is a record company called "Creedmoor Records,"

8   headed by Billy Beretti, who only appears in a few episodes.  *Id.*, Ep. 3, 5:11-6:00;

9   Ep. 4, 27:45-29:03, 29:50-30:47, 31:54-33:09; Ep. 9, 5:03-5:34, 10:42-12:11, 13:11-

10  14:30, 28:00-29:35; Ep. 11, 33:39-35:03.

11       *Empire* takes place in present day New York City.  Each episode includes the

12  performance of original pop and hip hop songs, nearly always performed by the

13  show's characters (who are not portrayed in the series by "actual recording stars"),

14  including Lucious's sons Jamal and Hakeem and Hakeem's on-again off-again love

15  interest, Tiana, all of whom are Empire Entertainment artists, occasionally joined by

16  guest artists who perform along with them.  *E.g., id.*, Ep. 1, 3:20-4:38, 30:11-32:33.[3]

17       In many ways, *Empire* is a contemporary take on Shakespeare's *King Lear*

18  and popular 1980s prime-time television soap operas like *Dynasty*, and *Dallas*,

19  which explored wealth, sex, intrigue, and power struggles within wealthy, powerful

20  families.  *Id.*, Ep. 11, 0:01-1:01.  *Empire*'s new twist—a patriarch who is a former

21  drug dealer-turned successful hip-hop and fashion mogul and who believes he is

22  dying, and his ex-wife, who also dealt drugs and becomes a musician and fashion

23  icon in her own right—is in many ways ripped from today's headlines.

24

25  _____

26  [3] *Empire* has also, on a few limited occasions, featured recording artists, such as
    Courtney Love and Jennifer Hudson, who played minor characters and who

27  performed, briefly, without being accompanied by a member of *Empire's* regular

28  cast.  *See* RJN, Ex. A, Ep. 7, 14:50-16:25; Ep. 11, 38:03-38:31.

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Empire* debuted on January 7, 2015, and airs during prime time on the Fox Broadcasting Company television network.  FAC, ¶ 9.  Season One consists of 12 episodes, each lasting between 44 and 47 minutes.  RJN, Ex. A.  *Empire* is currently in its second season and has been renewed for a third.

### C.    *Plaintiff's Access Allegations*

Plaintiff claims that, shortly after he wrote the Treatment in October 2007, he sent it to three individuals, none of whom he alleges are in any way connected to the creation of *Empire*.[4]  First, Plaintiff alleges that he faxed the Treatment to his "close friend[] and business associate," Nick Tulli.  FAC, ¶¶ 14-15, Ex. D.  Tulli did not pass the Treatment on to anyone, but "filed the material in a folder" in his home office, where it remained until it "may have accidentally been discarded" during a later move.  FAC, Ex. E-1.  Plaintiff also claims he faxed the Treatment to actor Richard Roundtree (who is not in *Empire*) and separately to Roundtree's agent Patrick McMinn.  FAC, ¶¶ 20, 24.  Plaintiff concedes (and emails attached to Plaintiff's FAC confirm) that McMinn informed Plaintiff by email on October 19, 2007, that neither he nor Roundtree had any interest in the project.  *Id.*, ¶¶ 26-29, Exs. J-1 , K-1, L-1.

Plaintiff does not allege that Tulli, McMinn, or Roundtree had any role in creating *Empire* or that they provided the Treatment to anyone who did.  While Plaintiff alleges that he had a "chance meeting" in 2012 with Terrence Howard (an actor in but not a creator of *Empire*) at a benefit honoring Muhammed Ali, Plaintiff does not allege that he and Howard actually spoke, let alone that Plaintiff gave Howard the Treatment.  FAC, ¶ 32.

---

[4] Plaintiff also alleges that *King Solomon* was listed—by title only—on the website for his company, Las Vegas Entertainment & Sports Television, Inc., as a project set for development.  FAC, ¶ 31, Ex. M.  He does not, however, allege that the Treatment was available on the website.

CALDWELL
LESLIE &
PROCTOR

-6-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

## III.   LEGAL STANDARD FOR RULE 12(b)(6) MOTION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

When deciding a Rule 12(b)(6) motion, the Court may also consider evidence on which the complaint "'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted).  Where, as here, the allegedly infringing works "are referenced in—although not attached to—the amended complaint, they are incorporated by reference in it, and can be considered by the court in assessing substantial similarity." *Shame on You*, 2015 WL 4885221, at *11.[5]

## IV.   PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE DISMISSED

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011) (citation omitted); *see also* 17 U.S.C. § 501(a).  "Absent direct evidence of copying,

---

[5] The first season of *Empire*, to which Plaintiff refers in his FAC, is attached to the concurrently filed RJN as Exhibit A.

CALDWELL LESLIE & PROCTOR

-7-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)).

### A.   Courts Routinely Dismiss Infringement Claims With Prejudice for Lack of Substantial Similarity When the Works are Before the Court

For the past seven decades, courts in this Circuit have followed the "rather obvious principle" that, "'when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'" *Gadh v. Spiegel,* No. CV 14-855-JFW (PJWx), 2014 WL 1778950, at *3 n.2 (C.D. Cal. Apr. 2, 2014) (quoting *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945), and citing cases). In *Wild v. NBC Universal*, for example, the Ninth Circuit affirmed the District Court's dismissal with prejudice of the plaintiff's clams that the television series *Heroes* infringed his graphic novel, where the alleged similarities consisted of "*scenes a faire*" or "random similarities scattered throughout the works" that were insufficient to support a claim of substantial similarity. 513 F.App'x 640, 641-42 (9th Cir. 2013); *see also Schkeiban v. Cameron*, 566 F.App'x 616, 617 (9th Cir. 2014) (affirming dismissal of Plaintiff's infringement claim, holding that the district court had "correctly ruled that *Avatar* and *Bats and Butterflies* are not substantially similar in their protected elements") (internal quotation marks and citation omitted). Other Circuits are in accord. *See, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 59 (2d Cir. 2010) (holding that "the district court properly determined non-infringement as a matter of law" in granting the defendants' Rule 12(b)(6) motion); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (observing that, because the plaintiff had referred to the alleged infringing work in the complaint, "the district properly considered the work in ruling on [defendant's] 12(b)(6) motion"); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989)

CALDWELL
LESLIE &
PROCTOR

-8-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  (concluding that the district court was "in proper position to apply the substantial

2  similarity test" on a motion to dismiss where both works were before the court).

3       District Courts routinely dismiss copyright infringement claims with

4  prejudice and without leave to amend where the works at issue are not substantially

5  similar in their protectable elements.[6] *See, e.g.*, *Zella v. E.W. Scripps Co.*, 529

6  F.Supp.2d 1124, 1130-31 (C.D. Cal. 2007) (granting motion to dismiss the

7  plaintiffs' claims the defendants' syndicated talk show, *Rachael Ray*, infringed

8  plaintiffs' one-page treatment and three-page script for a television series entitled

9  *Showbiz Chefs*, finding that the works were not substantially similar as a matter of

10  law); *Shame on You*, 2015 WL 4885221, at *32 (dismissing infringement claim with

11  prejudice where "there is no substantial similarity between plaintiff's and

12  defendants' works as a matter of law"); *Kennedy v. Paramount Pictures Corp.*, No.

13  12CV372-WQH-WMC, 2013 WL 1285109, at *6 (S.D. Cal. Mar. 27, 2013)

14  (dismissing infringement claim with prejudice after concluding "that, as a matter of

15  law, *Titanic* is not substantially similar to any protectable elements of Plaintiff

16  Kennedy's works, and Defendant did not 'cop[y] . . . constituent elements of

17  [Plaintiff Kennedy's] work that are original.'") (quoting *Feist Publ'ns, Inc. v, Rural*

18  *Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991)); *Mandeville-Anthony v. Walt Disney*

19  *Co.*, No. CV 11-2137-VBF (JEMx), 2012 WL 4017785, at *1 (C.D. Cal. July 28,

20  2012) (dismissing infringement claim where plaintiff's works, titled *Cookie & Co.*

21  and *Cars/Auto–Excess/Cars Chaos*, were not substantially similar to the Disney

22  animated films *Cars* and *Cars 2* or the spin-off series *Cars Toon*); *Gilbert v. New*

---

23

24  [6] Certain of these cases, including *Shame on You* were decided on a motion for
judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c), which is

25  "'functionally identical' to Rule 12(b)(6) and that the 'same standard of review'
applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. General*

26  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (quoting *Dworkin*

27  *v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) and applying *Iqbal*

28  to motion for judgment on the pleadings).

CALDWELL
LESLIE &
PROCTOR

-9-
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

*Line Prods., Inc.*, No. CV 09-02231 RGK (RZx), 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009) (granting motion to dismiss where the works were not similar as a matter of law and thus "there is no reason to allow the case to advance to the summary judgment stage").

The Works at issue here—Plaintiff's Treatment and *Empire*—are before this Court, and the comparison below between Plaintiff's Treatment and *Empire* makes clear that there is no substantial similarity between the works as a matter of law. *See, e.g.*, *DuckHole Inc. v. NBC Universal Media LLC*, No. CV 12-10077 BRO (CWx), 2013 WL 5797279, at *7 (C.D. Cal. Sept. 6, 2013) (dismissing copyright infringement claim with prejudice "[a]fter assessing the articulable similarities" between the works at issue and finding that they were not substantially similar). This Court should therefore dismiss Plaintiff's FAC with prejudice and without leave to amend.  *See Thomas v. Walt Disney Co.*, 337 F.App'x 694, **1 (9th Cir. 2009) (affirming dismissal with prejudice of copyright infringement claim where, "as a matter of law, [the plaintiff's] literary work was not substantially similar to defendants' animated movie") (internal quotation marks and citation omitted).

### B.    *Plaintiff Fails to Allege Facts Showing Defendants Had Access to His Treatment*

Plaintiff's copyright claim should be dismissed because Plaintiff alleges no facts showing that Defendants had access to the Treatment.  "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *see also Seals-McClellan v. Dreamworks, Inc.*, 120 F.App'x 3, 4 (9th Cir. 2004) (holding that "[a] bare possibility of access is insufficient to sustain a copyright infringement claim" (citing *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982)). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's

access, or (2) showing that the plaintiff's work has been widely disseminated." *Art Attacks*, 581 F.3d at 1143. Even then, however, "it must be reasonably possible that the paths of the infringer and infringed work crossed." *Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996). "Access may not be inferred through mere speculation or conjecture." *Murray Hill Publ'ns v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (internal quotation marks and citation omitted). Where, as here, a plaintiff fails to allege specific facts establishing access, his infringement claim should be dismissed. *See, e.g.*, *Feldman v. Twentieth Century Fox Film Corp.*, 723 F.Supp.2d 357, 366 (D. Mass. 2010) (dismissing infringement claim where the plaintiff "failed to allege facts sufficient to demonstrate a reasonable opportunity of access to her [works]").

Plaintiff not only fails to allege a chain of events linking the Treatment and access by a creator of *Empire*, but he expressly alleges that the chain of events *stopped* with the three people to whom he gave the Treatment. Plaintiff does not claim that Roundtree or his agent, McMinn, ever passed the Treatment on to anyone, let alone anyone with any role in creating *Empire*, FAC, ¶¶ 20, 24, 26-29, and Plaintiff's "close friend[] and business associate" Tulli concedes that he filed the Treatment away in his home office where it "*remained* in a file folder." FAC, ¶ 14, Ex. E-1 (emphasis added). In fact, the only person connected to *Empire* with whom Plaintiff had any contact is Howard, an actor in *Empire*, but even then, Plaintiff alleges that he and Howard had only "a chance meeting" at a charity event. FAC, ¶ 32. Plaintiff does not allege that he gave Howard the Treatment, *see id.*, and does not allege that Howard had any role in *Empire*'s creation. *See Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1356 (C.D. Cal. 1984) (finding no access where the plaintiff failed to "establish[] a nexus between the individual with knowledge of the plaintiff's work and the alleged copier"); *see also Towler*, 76 F.3d at 583 (finding no access when plaintiff alleged nothing more than a "'tortious chain of hypothetical transmittals'" linking the defendant to her work) (citation omitted).

CALDWELL
LESLIE &
PROCTOR

-11-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

Nor does Plaintiff allege that his work has been widely disseminated. Although he alleges that the "King Solomon" project is referenced on his company's website and that a published article directed readers to that website, FAC, ¶¶ 31, 33, Exs. M, O, he concedes that the Treatment itself was not available on that website. FAC, ¶ 31, Ex. M-1. *See Kenney v. Warner Bros. Entm't Inc.*, 984 F.Supp.2d 9, 13 (D. Mass. 2013) (dismissing infringement claim where the plaintiff "relie[d] on his website to support his claim of access," but did not allege that website included the work he claimed was infringed). Even if it were, "the mere fact that [Plaintiff's] work was on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F.Supp.2d 508, 515 (S.D.N.Y. 2008); *see also Art Attacks*, 581 F.3d at 1145 (publication on the internet, by itself, not "wide dissemination" of the plaintiff's work).

### C.    Empire Is Not Substantially Similar to Plaintiff's Treatment

"'Substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1398 (9th Cir. 1997); *see also* 17 U.S.C. § 102(b); *Smart Inventions, Inc. v. Allied Commc'ns. Corp.*, 94 F.Supp.2d 1060, 1066 (C.D. Cal. 2000) ("It is an axiom of copyright law that ideas are not protected."). Only protected expression is relevant for purposes of assessing substantial similarity. *See Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (court "must take care to inquire only whether the protectable elements [of the works at issue], standing alone, are substantially similar") (internal quotation marks, citations, emphasis omitted); *see also Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (requiring the court to disregard non-protectable elements in determining substantial similarity). "'[C]opyright protection does not extend to historical or contemporary facts, material traceable to common sources or in the public domains,

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

and *scenes a faire*.'"  *Chase-Riboud v. Dreamworks, Inc.*, 987 F.Supp. 1222, 1226 (C.D. Cal. 1997) (citation omitted).

The substantial similarity test contains an extrinsic and intrinsic component, *Funky Films*, 462 F.3d at 1077, but, at the pleading stage, only the extrinsic test applies.  *Zella*, 529 F.Supp.2d at 1133; *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (citation omitted).  The extrinsic test "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in two works."  *Funky Films*, 462 F.3d at 1077 (quoting *Kouf*, 16 F.3d at 1045).

Applying each factor of the extrinsic test to Plaintiff's Treatment and *Empire*, it is clear that there is no substantial similarity between the protectable elements of the two works.  Plaintiff's claimed "similarities"—to the extent they exist at all— consist of *ideas* or generic *scenes a faire*, none of which are protectable, *see Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("No one can own the basic idea for a story"), and thus none of which provide any support for Plaintiff's infringement claim.

### 1.    Plot

"General plot ideas are not protected by copyright law," but rather "remain forever the common property of artistic mankind."  *Berkic*, 761 F.2d at 1293; *see also Zella*, 529 F.Supp.2d at 1134 (observing that "courts have declined protection of ideas far more developed" than those contained in Zella's "one-page treatment and three-page script").  Plaintiff's Treatment sets forth his basic idea for the *King Solomon* mini-series:  King, a "Black Record Business Mogul," confronts the struggles of running a record label as well as the family drama arising out of his relationships with his three adult children (two sons and a daughter) and his half-brother.  FAC, Ex. A.  Even at this basic level, however, the plot described in Plaintiff's Treatment is distinct from that of *Empire*.  The plot in Plaintiff's Treatment is generic to any soap opera about a wealthy patriarch and his family.  In

CALDWELL
LESLIE &
PROCTOR

contrast, *Empire* focuses on two protagonists—Lucious and his ex-wife Cookie—and their three sons, as they deal with Cookie's release from prison, Empire's IPO, and the competition among the sons to succeed Lucious as Empire's CEO.  RJN, Ex. A, Ep. 1, 8:06-37, 4:38-6:42, 6:43-8:05.[7]  *Empire* also includes numerous major plot points that are entirely absent in Plaintiff's Treatment, including: Lucious's illness, his repeated homophobic rejection of his gay son Jamal, Jamal's struggle about whether to come out publicly as gay in the homophobic hip hop industry, Andre's (Lucious and Cookie's oldest son) inter-racial marriage and struggle with bipolar disorder, Cookie's battles with Lucious, the on-again-off-again romantic relationship between Cookie and Lucious (who is engaged to Anika), the feuding among the three brothers, the shifting alliances among Lucious, Cookie and each of their sons, and the struggles of singer sons Jamal and Hakeem to find their artistic voice.

Plaintiff lists thirteen purported "similarities" between his Treatment and *Empire* in his FAC, FAC, ¶ 11, most of which mischaracterize *Empire*.  For example, Plaintiff's treatment describes the "Mob" backing of King's rival record company, "Diamond Star Records" as a major element of the plot.  FAC, ¶ 11, Ex. A-4.  *Empire*'s rival "Creedmoor Records," is not, however, backed by the "Mob," and its owner, Billy Beretti, is a minor character, appearing only briefly in a few *Empire* episodes.  RJN, Ex. A, Eps. 4, 9, 11.  Plaintiff's allegation that the record label in each work started with one "female/band recording Artist," FAC, ¶ 11, is not only a minor plot point, but also incorrect, as Empire's first artist was not a "female singer" or a "band called 'The Elements,'" as described in the Treatment, FAC, Ex. A-4, but Lucious himself, who started Empire as a way to release his own

---

[7] There is no corresponding character in *Empire* to King's half-brother Jake, nor any plot in *Empire* that resembles Jake's storyline.

recordings after he left Creedmoor Recordings in a dispute with Beretti over royalties.  RJN, Ex. A, Ep. 4, 29:50-30:47, 31:54-33:09.

Courts in the Ninth Circuit have found plots with far more similarities than those between Plaintiff's Treatment and *Empire* to be *dissimilar* as a matter of law. *See, e.g.*, *Funky Films*, 462 F.3d at 1081; *Kouf*, 16 F.3d at 1044-45 (no substantial similarity between works involving plots with shrunken kids and the "life struggle of kids fighting insurmountable dangers"); *Berkic*, 761 F.2d at 1293 (no substantial similarity between works with plots of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and the general story of the "adventures of a young professional who courageously investigates, and finally exposes, the criminal organization"); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) (no substantial similarity between works about American war veterans who traveled to Japan to train the Japanese army to combat a samurai uprising); *Shame on You*, 2015 WL 4885221, at **16-17 (no substantial similarity between works where female main character who breaks up with boyfriend, gets intoxicated and has one-night stand, wakes up disoriented the next morning and, due to various difficulties including losing her cell phone and wallet, has a hard time finding her way home). Plaintiff's Treatment is far *less* similar to *Empire* than any of the works at issue in these cases, and Plaintiff cannot, as a result, sustain his infringement claim.

Plaintiff's remaining "similarities"—such as the fact that each Work includes a "wife and three (3) children," that Empire and Solomon Records each have "many subsidiaries," that two characters had children out of wedlock and that *King Solomon* and *Empire* are both "ground-breaking" with the look and feel of 1980s primetime soap operas, *see* FAC, ¶ 11—are either too trivial to create similarity or are unprotectable *scenes a faire* that naturally flow from a story about the struggles of running a family music business.  *See Cavalier*, 297 F.3d at 823.  That at least one child would enter the family business, and that there would be "friction between

family members to take over the family business" are "situations and incidents that flow necessarily or naturally from [the] basic plot premise" of a family-run business and thus "cannot sustain a finding of infringement."[8]  *See* FAC, ¶ 11; *see also Funky Films*, 462 F.3d at 1081 (finding similarities such as "the family-run funeral home, the father' death, and the return of the "prodigal son," who assists his brother in maintaining the family business" to be *scenes a faire* of stories about contemporary family-run funeral homes); 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.03[B][4] (Matthew Bender Rev. Ed.) (noting, for example, that any "writing about vampires" will involve "killings, macabre settings, and choices between good and evil").

### 2.   Sequence of Events

In assessing similarity (or lack thereof), the court looks to the "actual concrete elements that make up the total sequence of events" of works at issue.  *Funky Films*, 462 F.3d at 1077.  Most of Plaintiff's four-page Treatment consists of character descriptions and backstory (which, as described below, are also not similar to *Empire*), not "events."  FAC, Ex. A.  In fact, the only thing close to a story arc in Plaintiff's Treatment is centered on King's half-brother Jake, who is released from prison, crashes King's daughter Jenny's 21st birthday party, demands "hush-money," is thrown out of the party, tries (and fails) to find a job, returns to a life of crime and meets a young prostitute on the street, who turns out to be his daughter. FAC, Ex. A-5, A-6.

What little "sequence" appears in Plaintiff's Treatment is entirely dissimilar to *Empire*, which unfolds with Lucious announcing Empire's upcoming IPO, at the same time Cookie is being released from prison.  RJN, Ex. A, Ep. 1, 4:38-6:42,

---

[8] If "friction between family members to take over the family business" were a protectable element, as Plaintiff claims, *see* FAC, ¶ 11, then Plaintiff's Treatment would infringe *Dynasty*, the series on which Plaintiff acknowledges his story is based.  FAC, Ex. A-5.

8:06-37.  Cookie first arrives at her son Jamal's apartment, then makes her entrance at Empire, where she announces her intent to claim half of the company.  *Id.*, Ep. 1, 11:20-14:02, 14:04-15:42.  Cookie then visits her youngest son, Hakeem, whom she beats with a broom handle for being disrespectful, and is then visited by her oldest son, Andre, with whom she schemes to take over the company.  *Id.*, Ep. 1, 17:45-18:51, 26:01-28:02.  After Lucious decides to give Hakeem full credit for a song he wrote with Jamal, Jamal agrees to let Cookie manage him and make him a star, and also tells the Cookie that he wants to come out publicly as gay.  *Id.*, Ep. 1, 38:14-39:17.  Thereafter, Lucious is blackmailed by his long-time bodyguard (and Cookie's cousin) Bunkie.  *Id.*, Ep. 1, 36:43-37:45.  He then meets with Cookie, who tells him they are going to war and she will show him that a gay man (Jamal) can run his company.  *Id.*, Ep. 1, 44:18-45:04.  As the series unfolds, these story lines depart, come together and change direction, with the relationship between Lucious and Cookie always at the center.

Not only are the "events" in each story different, but the manner in which they are told is also wholly dissimilar.  While Plaintiff's Treatment refers to "occasional flashbacks," his story, in fact, unfolds linearly: Joe leaves his father's house, joins King's rival, King throws Jenny a birthday party, Jake appears, etc. *Empire's* storytelling is much more complex, with multiple story lines taking place at one time, with extensive use of flashbacks to both the recent and distant past to flesh out the characters' backstories.  *See Funky Films*, 462 F.3d at 1081 (finding no similarity in sequence where the plaintiff's work "unfolds in a straight, linear trajectory," while the defendant's "employs repetition, dreams, and flashbacks to intensify certain scenes and conflate the real with the unreal."); *see also Shame on You*, 2015 WL 4885221, at *30 (finding no similarity where the stories did not share any detailed sequence of events).

CALDWELL
LESLIE &
PROCTOR

-17-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

### 3.  Theme

Plaintiff alleges that the Works are similar because they are both about a wealthy black family headed by a black record mogul, dealing with the family's internal problems, as well as the external problems of running the family business. FAC, ¶¶ 11, 13.  *Empire*, however, is much more complex than this basic premise, as its themes include homophobia in the African-American community and hip hop industry, the struggle of a middle-aged woman (Cookie) to gain respect in the male-dominated hip hop world, interracial marriage, the pitfalls of young celebrity, the difficulty of mental illness, and the terminal illness of the series' protagonist. Regardless, themes of internal family problems and problems of running a business are neither original nor protectable.  *See Cavalier*, 297 F.3d at 823 ("[f]amiliar stock scenes and themes that are staples of literature are not protected" and hence cannot serve as grounds for substantial similarity); *Benjamin v. Walt Disney Co.*, No. CV-05-228 GPS, 2007 WL 1655783, at *5 (C.D. Cal. June 5, 2007) ("stock themes 'cannot raise a triable issue of fact on [a] plaintiff's copyright claim'") (citation omitted, alteration in original).  The themes Plaintiff identifies as purported similarities flow naturally from a shared premise of a family-run record label, and therefore cannot serve as a basis for infringement.  *See Willis v. Home Box Office*, No. 00 CIV 2500 (JSM), 2001 WL 1352916, at *2 (S.D.N.Y. Nov. 2, 2001) (rejecting claim of similarities based on "themes . . . common to the talent agency business, or to situation comedies in general or in trivial detail that are not essential to either series"); *cf. Murray v. National Broad. Co.*, 671 F.Supp. 236, 238, 245 (S.D.N.Y. 1987), *aff'd*, 844 F.2d 988 (2d Cir. 1988), *abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties*, 208 F.3d 368 (2d Cir. 2000) (rejecting misappropriation claim based on based on allegations of similarities between plaintiff's proposal for a television show about a black family headed by professional parents and *The Cosby Show,* holding that the portrayal of "an intact

1  black family in a color-blind, nonstereotypical manner" is not novel idea and other

2  similarities, such as the number of children, were trivial details).

3  **4.    Characters**

4      Only characters that are "especially distinctive" are protected by copyright

5  law.  *Olson v. National Broad. Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (citing

6  cartoon characters as example of a distinctive, copyrightable character); *Feldman*,

7  723 F.Supp.2d at 367 ("copyright protection does not extend to stock characters,

8  such as a blond, blue-eyed hero or doctors in 'hot and cold' romances").  Characters

9  with "traits that flow naturally from the works' shared premises" cannot serve as a

10 basis for infringement.  *Benay*, 607 F.3d at 626 (citing *Olson*, 855 F.2d at 1451-

11 53).).[9]  Plaintiff alleges that five of the characters from his Treatment were copied in

12 *Empire*:  Lucious and Cookie Lyon and their three children.  As described in detail

13 below, however, these characters share few characteristics at all, none of which are

14 protectable and nearly all of which are *scenes a faire* of Plaintiff's basic premise.

15      **(a)    Lucious and King are not Similar in Protected**

16           **Expression**

17      Plaintiff alleges that Lucious and King are similar because they are both black

18 record moguls, with a wife and three children, FAC, ¶ 11, characteristics that are far

19 too generic and common to be protectable.  *See, e.g.*, *Flynn v. Surnow*, No. CV 02-

20 9058-JFW (PLAx), 2003 WL 23411877, at *8 (C.D. Cal. Dec. 9, 2003) (no

21 protectable similarity where both works dealt with campaign of an African-

22 American Senator for President); *Shame on You*, 2015 WL 4885221, at *27 ("The

---

23

24 [9] The absence of corresponding characters in each work also weighs in favor of
   finding a lack of substantial similarity.  *See Funky Films*, 462 F.3d at 1078-79.

25 There are numerous characters in *Empire* without counterparts in Plaintiff's
   Treatment:  Andre's wife Rhonda, Lucious's fiancé, Anika, Becky, Lucious's

26 former assistant and Empire's current head of A&R, Lucious's confidant, Vernon,

27 and Cookie's love interest, Empire's chief of security Malcolm.  *Empire* has no

28 counterpart to King's half-brother Jake.

concept of a male character who works two or more jobs is not protectable."). Plaintiff's surface-level characterization also ignores the characters' key differences: Lucious is a world-famous musical artist, who left a life of drug dealing and violent crime to found a media, fashion and entertainment empire without any formal education, RJN, Ex. A, Ep. 1, 5:33-6:42, 39:50-40:49, while King is Harvard-educated, never had his own music career, and apparently has no criminal past. FAC, Ex. A-4, 6.  King, unlike Lucious, does not have ALS or any other serious illness, and Lucious's homophobic rejection of his gay son Jamal—a major component of his character—is wholly absent from Plaintiff's description of King.

### (b)  Cookie Is not Similar in Protected Expression to any Character in *King Solomon*

Plaintiff all but concedes that the only similarities between *Empire's* Cookie and King's wife Janet is that they are (or in Cookie's case, were) both wives.  *See* FAC, ¶ 11.  And indeed, the characters are wildly *dissimilar*.  King's first wife dies before Plaintiff's story begins, and Plaintiff describes King's second wife, Janet, cursorily as King's "childhood sweetheart and secretary" who supports Jenny's "modeling and actress career" but lacks a professional career and otherwise plays no role in the story.  FAC, Ex. A-4, 5.  Cookie, in sharp contrast, is Lucious's ex-wife who shares the spotlight with Lucious as one of *Empire's* primary characters.[10] Cookie emerges from jail after 17 years for drug dealing as a strong, charismatic, independent, blunt-talking and savvy businesswoman, as well as a talented music producer and manager.  *E.g.*, RJN, Ex. A, Ep. 1, 14:52-56, 28:02-30:10.  Plaintiff's characters King and Janet appear to be happily married, *see* FAC, Ex. A-4, while Lucious and Cookie are divorced and have a volatile love-hate relationship complicated by Lucious's fiancé, Anika.  RJN, Ex. A, Ep. 1, 16:35-17:13, Ep. 6,

---

[10] Actress Taraji P. Henson, who plays Cookie, recently won a Golden Globe Award for her hugely popular role.

2:43-3:33.  Cookie is an unflagging supporter of her gay son Jamal.  There are no gay characters in Plaintiff's Treatment, and Janet thus plays no such role.

While both stories have characters who were released from prison after serving sentences for drug crimes:  Cookie in *Empire*, and Jake, King's half-brother, *see* FAC, ¶ 11, any similarity between Cookie and Jake ends at the prison gate. Cookie is a talented music producer in her own right, and upon her release from prison, returns to reclaim her share of the record label she helped found and becomes part of Empire, managing her son Jamal and other Empire artists.  RJN, Ex. A, Ep. 1, 28:02-30:10.  In contrast, King's brother Jake is not a music producer and has no interest in taking over King's music business.  Jake returns from prison to extort "hush money" from his family and then returns to a life of crime, where he ends up in his own separate family drama arising out of his discovery of his unknown teenage daughter who has become a prostitute, FAC, Ex. A-5.

Moreover, being released from prison is an unprotectable *scene a faire* of the premise of a character involved in selling drugs.  *See Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1186 (C.D. Cal. 2001) ("[T]o the extent that the two characters *are* similar, it is only with respect to traits that are so generalized and/or cliché as to be nearly *scenes a faire* of the military/action genre."); *see also Feldman*, 723 F.Supp.2d at 367 (observing that "[a] person may not obtain a copyright on a particular type of character, particularly if this character represents a recognizable stereotype") (internal quotation marks and citation omitted).

### (c)   King's Adult Children are Not Similar in Protected Expression to Lucious's Three Sons

As Plaintiff points out, both Lucious and King each have three adult children, but the similarities end there.  Plaintiff has one son who is a hip hop artist, FAC, ¶ 11, while two of Lucious's sons (Jamal and Hakeem) are recording artists.  In Plaintiff's Treatment, the younger of the two sons, Joe, has been banned from his father's estate for dropping out of college, and is signed to rival "Diamond Star

1 Records," Solomon Records' rival.  FAC, Ex. A-4.  In contrast, Lucious does not

2 reject his rapper son, Hakeem, who never went to college.  RJN, Ex. A. at Ep. 1,

3 38:15-38:50.  Instead, Lucious works closely *with* Hakeem, in the hope of someday

4 naming Hakeem as his successor.  *Id.*, Ep. 4, 5:42-58.

5        Plaintiff also makes the weak contention that King's daughter, Jenny, is

6 similar to Lucious's gay son, Jamal, solely because Jamal is a "boy with feminine

7 qualities/Gay."  FAC, ¶ 11.  Plaintiff's assertion not only invokes inaccurate

8 stereotypes about gay men, but it also ignores important differences between Jenny,

9 a model-actress not in the music business, and Jamal, a nuanced character,

10 accomplished pop singer, and rising mogul in Empire Entertainment.

11       Finally, although the eldest sons in both works—*Empire*'s Andre and

12 Plaintiff's Jack—both have business degrees and hope to take over the company,

13 they, too, have no protectable commonalities.  Jack merits less than a sentence in

14 Plaintiff's Treatment.  FAC, Ex. A-4.  By contrast, Andre is a complex character,

15 whose bipolar disorder and inter-racial marriage inform much of his character's

16 storyline.  *E.g.*, RJN, Ex. A, Ep. 1, 24:41-26:00;  Ep. 10, 0:53-3:49.  Moreover,

17 while in Plaintiff's Treatment only one son seeks to take control of King's music

18 business, in *Empire* all three sons vie to take over Lucious's entertainment empire.

19 *Id.*, Ep. 1, 6:43-8:05.  In any event, being a hip hop artist or having a business

20 degree and a desire to take over the family company are characteristics far too

21 generic to be protectable.  *See, e.g.*, *Benjamin*, 2007 WL 1655783, at *6 (rejecting

22 infringement claim where both works featured "attractive, likable, 30-year-old

23 females that have escaped their humble past to pursue their dreams of working and

24 living in the big city"); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1176 (9th Cir. 2003)

25 (finding "shared attributes of appearance and mysterious demeanor" between

26 magician characters to be "generic and common"); *Capcom Co., Ltd. v. MKR Grp.,*

27 *Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *8 (N.D. Cal. Oct. 20, 2008)

28

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  (rejecting infringement claim based on "superficial, generic physical similarities of

2  gender, hair color and wardrobe").

3  **5.    Mood**

4       The works' moods must be both similar *and* protectable to support an

5  infringement claim.  *See Zella*, 529 F.Supp.2d at 1136 (observing that "the relaxed,

6  fun mood of the two shows is not a protectable element, even though it may be

7  substantially similar.").  "A general mood that flows 'naturally from unprotectable

8  basic plot premises' is not entitled to protection."  *See Shame on You*, 2015 WL

9  4885221, at *22 (citation omitted).

10      Plaintiff describes the mood of his mini-series as the "style and elegance of

11  'Dynasty' meets 'The Sopranos' with a sprink[l]ing of 'The Godfather' blending, in

12  and out, for effect." FAC, ¶ 11, Ex. A-7.  The idea of an "elegant" family drama,

13  reminiscent of 1980s prime-time soap operas, is neither original nor protectable.

14  *See Olson*, 855 F.2d at 1451 (finding no infringement where the similarities between

15  the works were "common to the genre of action-adventure television series"); *Rice*,

16  330 F.3d at 1177 (concluding that the mood of secrecy and mystery in works about

17  the mystery of magic was "generic, constitute[d] *scenes a faire,* and merge[d] with

18  the idea of revealing magic tricks").

19      Plaintiff also alleges that his Treatment contemplates having actual recording

20  stars perform their hits or introduce new material each week, while, according to

21  Plaintiff, *Empire* features many "present day stars performing their materials."  FAC

22  ¶ 11.  The *idea* of having artists perform in a story about the music industry is not,

23  itself, protectable, *see Berkic*, 761 F.2d at 1293 ("No one can own the basic idea for

24  a story"), as evidenced by series like *Glee, Nashville*, and even *The Partridge*

25  *Family*.  Moreover, most of the songs in *Empire* are not performed by "present day

26  stars" but by the characters themselves, *e.g.*, RJN, Ex. A, Ep. 1, 3:20-4:38, 30:11-

27  32:33, whereas Plaintiff's Treatment contemplates performances by "present day

28  stars" and not by characters.

CALDWELL
LESLIE &
PROCTOR

-23-

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

#### 6.     Setting

The works have different settings—*Empire* takes place in New York City, while the story in Plaintiff's Treatment takes place in Hollywood.  "The mere fact that some portion of both works occurs in a city" is 'generic and inconsequential.'" *Shame on You*, 2015 WL 4885221, at *23 (*quoting Rice*, 330 F.3d at 1177).

#### 7.     Pace

Plaintiff's four-page Treatment—which includes only a smattering of general plot ideas—does not convey any pace at all, let alone a pace similar to *Empire's*. *See Idema*, 162 F.Supp.2d at 1185 (noting the difficulty of comparing the pace "between works that are captured in different media (written word versus film)"). But even if the pace of both Works could be considered similar because they are both part of the genre of hour-long, family soap operas or dramas, that similarity is so common to those genres that it is not evidence of infringement.  *See Shame on You*, 2015 WL 4885221, at *25 ("[E]ven if it is assumed that both works feature the brisk pace of many modern comedies, similarities of pace that are common to a genre are insufficient to satisfy the extrinsic test."); *Olson*, 855 F.2d at 1451 (noting that "quick[] pace[]" is "common to the genre of action-adventure television series and movies and therefore do[es] not demonstrate substantial similarity").

#### 8.     Dialogue

"To show substantial similarity based on dialogue, a plaintiff must establish 'extended similarity of dialogue.'"  *Shame on You*, 2015 WL 4885221, at *21 (quoting *Olson*, 855 F.2d at 1450).  Plaintiff alleges *no* similarities in the dialogue whatsoever —nor could he, as his four-page Treatment contains no dialogue.

* * *

Plaintiff identifies no similarities in protectable expression between his Treatment and *Empire*, and a comparison of the two Works reveals that no such similarities exist.  No additional pleadings can change that fact, and Plaintiff's infringement claim should be dismissed with prejudice.  *See Zella*, 529 F.Supp.2d at

CALDWELL
LESLIE &
PROCTOR

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  1130-31; *see also Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1116 (N.D.

2  Cal. 2010) (denying leave to amend where works were not substantially similar).

## V.  LEAVE TO AMEND WOULD BE FUTILE

4  Plaintiff's FAC should be dismissed in its entirety, and with prejudice,

5  because nothing Plaintiff could allege in an amended complaint could change the

6  fact that *Empire* is not substantially similar in protectable elements to Plaintiff's

7  Treatment.  *See Campbell*, 718 F.Supp.2d at 1116 (denying leave to amend where

8  the works were not substantially similar); *Gadh*, 2014 WL 1778950, at *6

9  (dismissing with prejudice where works were not substantially similar).

## VI.  CONCLUSION

11  For the foregoing reasons, Defendants respectfully request that the Court

12  grant this Motion and dismiss the FAC with prejudice and without leave to amend.

14  DATED:  January 18, 2016            CALDWELL LESLIE & PROCTOR, PC
15                                      LINDA M. BURROW
                                        KELLY L. PERIGOE
16
17                                      By _____/s/_____
                                              LINDA M. BURROW
18                                      Attorneys for Defendants DANIEL WILLIAM
19                                      STRONG, LEE DANIELS, IMAGINE
                                        TELEVISION, LLC, and TWENTIETH
20                                      CENTURY FOX FILM CORPORATION

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES