UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS–MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by defendants Daniel Strong, Lee Daniels, Imagine Television, LLC, and Twentieth Century Fox Film Corp. (collectively "Defendants") (Docket No. 20). Defendants challenge the sufficiency of the First Amended Complaint ("FAC") filed by plaintiff Jon Astor-White ("Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for March 21, 2016, is vacated, and the matter taken off calendar.

**I.     Factual and Procedural Background**

Plaintiff filed the FAC as a matter of right while he was appearing pro se, but since that time has retained counsel. Defendants are the producers and creators of the television series "Empire." Plaintiff alleges that "Empire" infringes his treatment for "King Solomon," which describes a concept for a television series centered on the story of a recording industry mogul and his family. The treatment, which is attached as an exhibit to the FAC, consists of one page of "suggested" actors for the key roles and little more than three pages describing the characters, their relationships, and some of the plot of the proposed television series. The FAC alleges that he faxed the treatment to his friend Nick Tulli in 2007, and, also in 2007 to the actor Richard Roundtree and Mr. Roundtree's manager. Mr. Roundtree's manager later told Plaintiff that Mr. Roundtree did not want to commit to the project. Plaintiff later created a website that listed "King Solomon" as a project he was developing. That website did not provide any details about "King Solomon." Plaintiff also alleges that he met Terrence Howard, who stars in "Empire," at an event in 2012. Plaintiff does not allege that he discussed "King Solomon" with Mr. Howard.

According to the treatment, the main character is King Solomon. King, who was educated at Harvard, started a small record label with one female singer and turned that into a billion dollar business with numerous subsidiaries. King's first wife died suddenly and he then married his childhood sweetheart Janet. Janet and King's three children are 20-year-old Jenny, an aspiring actress, Jack, aged 25, who has a college degree in business administration, and Joe, who is 23. Joe recently dropped out of college against his father's wishes to start a career as a hip hop artist with a Mafia-backed record company run by King's rival Jim Diamond. Plaintiff's treatment describes King's plans to host a birthday party for his daughter Jenny. Those plans are disrupted when King's half-brother Jake, who was just released from prison after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

serving a 20-year sentence for drug possession, arrives and threatens to reveal a secret he and King share. Jake has a teenaged daughter who is strung out on drugs and involved in prostitution.

The treatment says that actual recording artists will appear in each episode to perform their hits or introduce new material. "King Solomon" is set in Hollywood and, provides "an inside look into the billion dollar record business, through the eyes of a wealthy black family, struggling to balance family and business." Plaintiff's treatment describes "King Solomon" as having "the style and elegance of 'Dynasty' meets 'The Sopranos' with a sprink[l]ing of 'The Godfather' . . . ."

"Empire" chronicles the struggle of Lucious Lyon, a rapper and former drug dealer who is now a music mogul.[1/] Lucious is diagnosed with a fatal disease in the show's premiere. "Empire" centers around Empire Entertainment, a privately held music and entertainment empire, which Lucious started with his ex-wife, Cookie. Cookie was recently released from prison after serving a 17-year sentence on drug charges. Lucious, Cookie, and their three sons—Andre, a married businessman with bipolar disorder, Jamal, a gay singer rejected by the homophobic Lucious, and Hakeem, a talented but unfocused rapper—fight for future control over Empire Entertainment.

"Empire" takes place in present day New York City. Each episode includes the performance of original pop and hip hop songs. These songs are usually performed by the show's characters, including Jamal, Hakeem, and Hakeem's love interest Tiana, all of whom are Empire Entertainment artists. Defendants compare the shifting alliances within Lucious' family to Shakespeare's "King Lear" and prime-time television soap operas like Dynasty and Dallas, which "explored wealth, sex, intrigue, and power struggles within wealthy, powerful families."

The FAC alleges a single claim for copyright infringement. In their Motion to Dismiss, Defendants contend that Plaintiff has failed to allege facts showing that Defendants had access to his treatment and that the FAC fails to state a viable claim because Plaintiff's treatment and "Empire" are not substantially similar in ways protected by the Copyright Act.

---

[1/] Defendants have submitted DVD recordings of the first season of "Empire" and requested that the Court consider those recordings as if they are incorporated by reference into the FAC because the FAC references "Empire" repeatedly in its allegations. Plaintiff has not objected to Defendants' submission of the DVD recordings. See Shame on You Productions, Inc. v. Elizabeth Banks, 120 F. Supp. 1123, 1144 (C.D. Cal. 2015) (considering screenplays and video recordings that were referenced in but not attached to a complaint, and the authenticity of which is not disputed, without converting a motion for judgment on the pleadings into a summary judgment motion).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

## II. Standard on Motion to Dismiss

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## III. Analysis

The elements of copyright infringement are: (1) ownership of a valid copyright and (2) unauthorized copying by the defendant of protected elements of the work. See Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003). "Copying may be established by showing that the infringer had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (citing Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990)). In determining if two works are substantially similar, the Ninth Circuit's test contains both an extrinsic and an intrinsic component. Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1077 (9th Cir. 2006). When assessing substantial similarity as a matter of law, "courts apply only the extrinsic test." Id. "[T]he intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Id.

"The extrinsic test is an objective test based on specific expressive elements: the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010). The court "compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985). In applying the extrinsic test, it is the plaintiff's burden to identify the sources of the alleged similarity between the plaintiff's work and the allegedly infringing work. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994). Once the plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." Id. In comparing these features, the Court must first filter out any "unprotectable elements." Id. According to the Ninth Circuit:

> Familiar stock scenes and themes that are staples of literature are not protected. In Berkic, we rejected finding substantial similarity based on scenes such as "depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other." Scenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement.

Cavalier, 297 F.3d at 823 (quoting Berkic, 761 F.2d at 1294). "'Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.'" Shaw, 919 F.2d at 1363 (quoting Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987)). Under the "inverse ratio" rule, a plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work, if it can be shown that the defendant had access to the copyrighted work. Id. at 1361; see also Rice v. Fox Broad. Co., 330 F.3d 1170, 1178 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

### A. Access

In the absence of direct evidence of copying, "[t]o prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work. Where there is no direct evidence of access, circumstantial evidence ban be used to prove access either by (1) establishing a chain of events linking plaintiff's work and the defendant's access, or (2) showing that plaintiff's work has been widely disseminated." Art Attacks Ink, LLC v.MGA Entm't Ins., 581 F.3d 1138, 1143 (9th Cir. 2009) (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481-82 (9th Cir. 2000)). "Absent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987).

Here, Plaintiff alleges that he provided his treatment to only three individuals, none of whom are alleged to have been involved in the creation of "Empire" or to otherwise have any relationship with Defendants. Plaintiff has alleged no facts supporting even an inference that Defendants had direct access to his treatment. Nor does the FAC allege facts that the treatment was widely disseminated. In fact, the only plausible inference to draw from the FAC's allegations is that the treatment was not widely disseminated. Indeed, all of the facts alleged in the FAC are inconsistent with even a "bare possibility," let alone a "reasonable possibility," that Defendants had access to the treatment. Art Attacks Ink, 581 F.3d at 1143. Finally, as will be discussed below in more detail when analyzing whether Plaintiff's treatment and "Empire" are substantially similar, the Court concludes that whatever similarities may exist between the two works are not so "striking" as to create a reasonable inference of copying to satisfy the access requirement. The Court therefore concludes that Plaintiff's failure to allege facts that plausibly show that Defendants had access to his work is fatal to his copyright infringement claim. Id. at 1145 ("A reasonable jury could not have concluded that there was more than a 'bare possibility' that [defendant had access to plaintiff's work.] Accordingly, we affirm the district court's grant of summary judgment to [defendant] on the copyright infringement claim.").

At a minimum, even if Plaintiff's implausible allegations stated enough facts to support an inference of access to survive this Motion to Dismiss, those allegations are so weak that Plaintiff does not benefit from the"inverse ratio" rule, and therefore does not have a reduced burden to show a "lesser degree of similarity" between his treatment and "Empire." See Rice, 330 F.3d at 1178 ("Under the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'").

### B. Substantial Similarity

Because Defendants' Motion to Dismiss challenges the substantial similarities between Plaintiff's treatment and "Empire" as a matter of law, only the extrinsic test is applicable at this stage of the proceedings. See Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); see also Shame on You Productions, 120 F. Supp. 3d 1123 (determining no substantial similarity under the extrinsic test on a combined Rule 12(c) Motion for Judgment on the Pleadings and Rule 12(b)(6) Motion to Dismiss).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

### 1. Plot, Sequence of Events, and Theme

"No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." Berkic, 761 F.2d at 1293. As in Berkic, both Plaintiff's treatment and "Empire" have some similarities at "a very high level of generality." Id. Specifically, both stories involve a successful and wealthy African American entertainment mogul with three children involved in the recording industry. See Shaw, 919 F.2d at 1356 ("Copyright law protects an author's expression; facts and ideas within a work are not protected."); see also Benay, 607 F.3d at 625 ("The most important similarities involve unprotectable elements. They are shared historical facts, familiar stock scenes, and characteristics that flow naturally from the works' shared basic plot premise. Stripped of these unprotected elements, the works are not sufficiently similar to satisfy the extrinsic test."); Cavalier, 297 F.3d at 824 ("[The two works] share the general premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep. But basic plot ideas, such as this one, are not protected by copyright law.").

Plaintiff's skeletal treatment provides very little detail concerning either a sequence of events or theme, but to the extent the treatment contains a sequence of events, it has almost nothing in common with the way the story of "Empire" develops. In his Opposition, Plaintiff identifies the themes shared by the two work as "music, family, extreme wealth, competition, excitement and power brought to life through the perspectives of a Black record label and his family as central characters . . . ." But these "themes" are not well-developed in Plaintiff's treatment, and "to the extent the works share themes, those themes arise naturally from the premise . . . [and] the works develop those themes in very different ways." Benay, 607 F.3d at 627. Moreover, the important themes in "Empire" involve familial conflict, inter-generational succession, homophobia, sexism, interracial marriage, the difficulties of mental illness, and terminal illness that are either absent from Plaintiff's treatment or explored in far more complex ways. That both works include musical performances is not protectable but instead flows from the basic premise of both ideas. Berkic, 761 F.2d at 1293.

### 2. Characters

Plaintiff contends that many of the characters in the two works are similar. The Ninth Circuit has "allowed copyright protection for characters who are especially distinctive." Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1452 (9th Cir. 1988). "[T]raits that flow naturally from the works' shared premises" do not "have significance under copyright law." Id. at 626. As with other aspects of the substantial similarity analysis, Plaintiff's underdeveloped treatment lacks detail about the characters

Among the similarities identified by Plaintiff are that King and Lucious "are Black record moguls who rise to power and become billionaires in the record industry" and have three children. But whereas King attended Harvard and began his recording industry career by signing a female singer and a band, Lucious' music career started when he became a performer and left a life of drug dealing and violent crime to found a media, fashion, and entertainment empire without any formal education. Moreover, one

Case 2:15-cv-06326-PA-RAO   Document 29   Filed 03/28/16   Page 7 of 8   Page ID #:354

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

of the defining characteristics of Lucious, his terminal illness, is completely absent from Plaintiff's treatment.

Plaintiff also alleges that the character of King's brother Jake and "Empire's" Cookie are similar because both appear in their respective stories after serving long prison sentences for drug offenses. But the relationship between Lucious and his ex-wife Cookie is very different from the relationship King has with Jake, and Jake does not appear to be the dramatic foil or professional rival that Cookie is. Nor is Jake described as the sort of charismatic and savvy businesswoman, music producer, and manager that Cookie is.

Plaintiff focuses on the fact that both King and Lucious have three children and that one of those children has a business degree, while the other two children are performers. In Plaintiff's treatment, King's younger two children are an aspiring singer, who King discourages and banishes, and an aspiring actress. Both of Lucious' younger sons are singers, neither of whom are threatened with banishment because of their chosen careers, and Lucious' business-minded son also struggles with bipolar disorder and the complexities of an inter-racial marriage. Although Plaintiff contends that Lucious' homosexual son Jamal is similar to King's daughter Jenny because "both [are] associated with the feminine gender," the Court rejects this outdated and offensive stereotype, and is disappointed that Plaintiff's counsel would so blithely make such an argument.

### 3. Setting, Mood, Pace, and Dialogue

Plaintiff's treatment is set in Hollywood, while "Empire" takes place in New York. Given that both stories involve an entertainment mogul living a lavish lifestyle, any similarities in the settings naturally flow from that unprotected idea and therefore do not support a finding of substantial similarity for purposes of copyright law. Berkic, 761 F.2d at 1293. Similarly, that both works find inspiration for their mood and pacing in the prime-time soap operas of the 1980s flows naturally from the basic idea for the shows and is unprotected scenes a faire. Id. Finally, as Plaintiff concedes, his treatment has no dialogue, so there is no way to find a substantial similarity between the two works based on that element.

### Conclusion

For all of the the foregoing reasons, the Court concludes that the FAC fails to state a viable claim for copyright infringement. Specifically, far from alleging facts that could support a reasonable basis for finding that Defendants could have accessed Plaintiff's work, the FAC instead pleads facts that are incompatible with access. No amendment that is consistent with the access allegations contained in the FAC could cure these deficiencies. Additionally, an objective extrinsic analysis of the two works reveals that they are not substantially similar in their protectable elements. Because Plaintiff's treatment is the sole basis for his infringement claim, and that treatment is not substantially similar to "Empire," the Court concludes that any amendment would be futile. The Court therefore grants Defendants' Motion to Dismiss and dismisses the FAC without leave to amend. See Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6326 PA (RAOx) | Date | March 28, 2016 |
|---|---|---|---|
| Title | Jon Astor-White v. Daniel Strong, et al. | | |

pleadings before the court demonstrate that further amendment would be futile."). The Court will issue a Judgment consistent with this Order.

    IT IS SO ORDERED.