1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MOLLY M. LENS (S.B. #283867)
      mlens@omm.com
3   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 8th Floor
4   Los Angeles, California  90067-6035
    Telephone:  +1 310 553 6700
5   Facsimile:   +1 310 246 6779

6   ANTON METLITSKY (*pro hac vice*)
      ametlitsky@omm.com
7   O'MELVENY & MYERS LLP
    7 Times Square
8   New York, New York 10036
    Telephone:  +1 212 326 2000
9   Facsimile:  +1 212 326 2061

10  *Attorneys for Defendants Daniel William*
    *Strong, Lee Daniels, Imagine Television,*
11  *LLC, and Twentieth Century Fox Film*
    *Corporation*

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16  JON ASTOR-WHITE,                    | Case No. 15-CV-06326 PA-RAO

17              Plaintiff,              | **NOTICE OF MOTION AND**
                                        | **MOTION TO DISMISS**
18      v.                              | **PLAINTIFF'S THIRD**
                                        | **AMENDED COMPLAINT**
19  DANIEL WILLIAM STRONG, ET AL.,      |
                                        | **[DECLARATION OF PATRICK**
20              Defendants.             | **S. MCNALLY, REQUEST FOR**
                                        | **JUDICIAL NOTICE, AND**
21                                      | **[PROPOSED] ORDER FILED**
                                        | **CONCURRENTLY HEREWITH]**

22                                      | **Hearing Date:** June 17, 2019
                                        | **Hearing Time:** 10:00 a.m.
23                                      | **Place:** Courtroom 9A
                                        | **Judge:** Hon. Percy Anderson

24

25

26

27

28

                                    DEFENDANTS' MOTION TO DISMISS
                                    THIRD AMENDED COMPLAINT
                                    CASE NO. 15-CV-06326 PA-RAO

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on June 17, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of this Court, located at 350 West First Street, Los Angeles, California 90012, Defendants Daniel William Strong, Lee Daniels, Imagine Television, LLC, and Twentieth Century Fox Film Corporation (collectively, "Defendants")[1] will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice plaintiff Jon Astor-White's ("Astor-White") Third Amended Complaint ("TAC"). This Motion is made on the grounds that the TAC, like the three prior complaints, fails to allege adequately that Defendants had access to Astor-White's work or that Astor-White's work is substantially or strikingly similar to Defendants' work.

This Motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on May 9, 2019.  Declaration of Patrick S. McNally ¶ 2.  This Motion is based on the files, records, and proceedings in this action, this Notice, the Memorandum of Points and Authorities, the Declaration of Patrick S. McNally and exhibits thereto, the Request for Judicial Notice, the reply memorandum that Defendants intend to file, the arguments of counsel, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

Dated:  May 17, 2019

O'MELVENY & MYERS LLP

By:  /s/ Daniel M. Petrocelli
Daniel M. Petrocelli

*Attorneys for Defendants Daniel William Strong, Lee Daniels, Imagine Television, LLC, and Twentieth Century Fox Film Corporation*

---

[1] Imagine Television, LLC and Twentieth Century Fox Film Corporation were sued as Imagine Entertainment and Twenty-First Century Fox, respectively.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

# TABLE OF CONTENTS

<b>Page(s)</b>

I.     INTRODUCTION ............................................................... 1

II.   BACKGROUND ................................................................ 1

     A.    The Works at Issue................................................... 1

     B.    Legal Background. ................................................... 3

     C.    Procedural Background.......................................... 4

     D.    The TAC................................................................ 8

III.  ASTOR-WHITE FAILS TO STATE A COPYRIGHT CLAIM................. 10

     A.    The TAC's New Allegations Do Not Plausibly Allege that Defendants Actually Copied King Solomon. ..................................... 11

     B.    The TAC's New Allegations Do Not Plausibly Allege That King Solomon Are Substantially Similar. .................................. 14

IV.  CONCLUSION ............................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americopters, LLC v. FAA*,
   411 F.3d 726 (9th Cir. 2006) .................................................................. 12

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ........................................................ 3, 10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 12

*Baxter v. MCA, Inc.*,
   812 F.2d 421 (9th Cir. 1987) ............................................................... 3, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 7, 12

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ......................................................... 5, 8, 16

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ............................................................... 4, 14

*Esplanade Prods., Inc. v. Walt Disney Co*,
   2019 WL 1787533 (9th Cir. Apr. 24, 2019) .......................................... 15

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ................................................................ 14

*Jacobsen v. Deseret Book Co.*,
   287 F.3d 936 (10th Cir. 2002) ................................................................ 15

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) .................................................................... 4

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ................................................................ 15

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) .................................................................. 17

**TABLE OF AUTHORITIES**
(continued)

Page

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir.1930) ................................................................... 16

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ............................................................. 16

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ..................................................*passim*

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ............................................................. 12

*Seals-McClellan v. Dreamworks, Inc.*,
   120 F. App'x 3 (9th Cir. 2004) ......................................................... 13

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
   733 F.3d 1251 (9th Cir. 2013) ...................................................... 3, 10

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) ............................................................. 16

**Other Authorities**

Nimmer on Copyright § 13.02[B] (2015) ............................................. 3, 13

I.      **INTRODUCTION**

Plaintiff Jon Astor-White's fourth attempt to plausibly allege that Defendants'[1] television show *Empire* infringes his alleged copyright in *King Solomon* adds not a single material allegation to his previous attempts, each of which have failed to state a claim as a matter of law.  As with his previous complaints, the Third Amended Complaint ("TAC") should be dismissed.

The Court dismissed Astor-White's First Amended Complaint ("FAC") for failure to plausibly allege access or substantial similarity, and the Ninth Circuit affirmed that decision.  Last year, Astor-White filed his Second Amended Complaint ("SAC"), which the Court likewise dismissed.  And despite being given another opportunity to amend his complaint, Astor-White's TAC contains *zero* new factual allegations to plausibly allege actual or illicit copying—there are no new factual allegations that Defendants had access to *King Solomon* or that *King Solomon* and *Empire* are substantially, much less strikingly, similar.  Because the TAC is materially identical to the deficient and dismissed FAC and SAC, the Court should grant Defendants' Motion for the same reasons it granted Defendants' prior motions to dismiss.  And given the demonstrated futility of amendment and Astor-White's many opportunities to amend, dismissal this time should be with prejudice.

II.     **BACKGROUND**

A.      **The Works at Issue.**

Defendants are the creators and producers of the highly successful *Empire* television series.  Plaintiff Jon Astor-White alleges that *Empire* infringes his copyright in a four-page treatment for a proposed miniseries called *King Solomon*. He alleges Defendants had access to his treatment through one of two people, neither of whom is alleged to have been involved with the creation of *Empire*.  The

---

[1] Defendants are Daniel William Strong, Lee Daniels, Imagine Television, LLC, and Twentieth Century Fox Film Corporation.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

1  Court's decision dismissing the FAC—which the Court later incorporated into its
2  decision dismissing the SAC, Dkt. 66 ("SAC Order") at 2 n.1—describes both
3  works in detail:[2]

4      1.  *Empire* chronicles "the struggle of Lucious Lyon, a rapper and former
5  drug dealer who is now a music mogul" and who "is diagnosed with a fatal disease
6  in the show's premiere."  Dkt. 29 ("FAC Order") at 2.  *Empire* "centers around
7  Empire Entertainment, a privately held music and entertainment empire, which
8  Lucious started with his ex-wife, Cookie," and involves a "fight for future control
9  over Empire Entertainment" between Lucious, Cookie, and their three sons.  *Id.*  It
10  "takes place in present day New York City," and each "episode includes the
11  performance of original pop and hip hop songs … usually performed by the show's
12  characters."  *Id.*  The series describes the "shifting alliances within Lucious'
13  family," and explores "wealth, sex, intrigue, and power struggles within [a]
14  wealthy, powerful famil[y]."  *Id.*

15      2.  The *King Solomon* treatment "describes a concept for a television series
16  centered on the story of a recording industry mogul and his family."  *Id.* at 1.  The
17  main character is King Solomon, "who was educated at Harvard" and who "started
18  a small record label with one female singer and turned that into a billion dollar
19  business with numerous subsidiaries."  *Id.*  After his first wife's death, King
20  married his high school sweetheart, Janet, and the couple have three children.  *Id.*
21  The "treatment describes King's plans to host a birthday party for his daughter
22  Jenny"; those "plans are disrupted when King's half-brother Jake, who was just
23  released from prison after serving a 20-year sentence for drug possession, arrives
24  and threatens to reveal a secret he and King share."  *Id.* at 1-2.  The series would
25  take place in Hollywood and would include "actual recording artists [appearing] in
26  each episode to perform their hits or introduce new material," providing "an inside

27  ─────────────
28  [2] The Ninth Circuit did not dispute the accuracy of the Court's description of the
works.  Dkt. 41 ¶¶ 1-3.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

look into the billion dollar record business, through the eyes of a wealthy black family, struggling to balance family and business." *Id.* at 2.

### B.    Legal Background.

The TAC attempts to allege federal copyright infringement.  Under Ninth Circuit precedent, Astor-White must show (among other things) that Defendants unlawfully "cop[ied] … constituent elements of [*Empire*] that are original." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).  This element has "two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).  The showings necessary to satisfy each element are as follows:

**Actual Copying**.  When, as is undisputed here, "the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id*.  If, however, the plaintiff cannot plausibly allege a "reasonable possibility" that the defendant had access to his work, *Art Attacks Ink*, *LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009), then "a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).  But this "striking similarity" standard is quite demanding.  "At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created." *Nimmer on Copyright* § 13.02[B] (2015).

**Illicit Copying**.  Even if a plaintiff can adequately allege *actual* copying, he still must show that there was "*illicit* copying," or "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117 (affirming dismissal of copyright infringement action where, although the defendant's work was based on the plaintiff's work, there was no substantial similarity in protectable expression).  "To prove unlawful appropriation, … the similarities between the two works must be 'substantial' and

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

they must involve protected elements of the plaintiff's work." *Id.* The so-called "extrinsic" portion of the substantial-similarity test "may be decided by the court as a matter of law … on a motion to dismiss." *Id.* at 1118.[3]

Under the extrinsic test, the court "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.* Where, as here, the works at issue are literary, the test "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works. *See Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal quotations omitted). Courts "must take care to inquire only whether the protectable elements, standing alone, are substantially similar," and therefore must "filter out and disregard the non-protectable elements" such as ideas, concepts, and *scènes-à-faire*, when considering substantial similarity. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

## C.   Procedural Background

1. Astor-White filed his original complaint on August 19, 2015, Dkt. 1, alleging that the first season of *Empire* infringed his *King Solomon* treatment.[4] He filed the FAC on September 9, 2015, Dkt. 11, which Defendants moved to dismiss, Dkt. 20. The Court granted that motion on March 28, 2016. FAC Order at 7.

a. The Court first concluded that Astor-White failed to allege adequately that Defendants actually copied his work. Astor-White attempted to allege access by asserting that "he provided his treatment to only three individuals, none of whom are alleged to have been involved in the creation of *Empire* or to otherwise have

---

[3] If a copyright plaintiff satisfies the extrinsic test, he must also satisfy the intrinsic test, which "requires a more holistic, subjective comparison of the works." *Id.* Unlike the extrinsic test, the intrinsic test can only be applied by the fact-finder. But if the plaintiff fails to satisfy the extrinsic test as a matter of law, the claim fails without any application of the intrinsic test.

[4] Unless otherwise noted, all references to *Empire* are to the first season of *Empire*.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

1   any relationship with Defendants." FAC Order at 5. The Court explained that

2   Astor-White "alleged no facts supporting even an inference that Defendants had

3   direct access to his treatment," and that "all of the facts alleged in the [complaint]

4   are inconsistent with even a 'bare possibility,' let alone a 'reasonable possibility,'

5   that Defendants had access to the treatment." *Id.* The Court also concluded "that

6   whatever similarities may exist between the two works are not so 'striking' as to

7   create a reasonable inference of copying to satisfy the access requirement." *Id.*

8   This deficiency was "fatal to [Astor-White's] copyright infringement claim." *Id.*

9       b. The Court also concluded that Astor-White's claim failed for a second,

10  independent reason—*viz.*, a failure to demonstrate substantial similarity. Notably,

11  the Court did not reach this conclusion based merely on Astor-White's

12  characterization of the works and their alleged similarities in the FAC. Rather, the

13  Court analyzed both works themselves, *e.g.*, FAC Order at 6-7, and concluded that

14  none of the works' copyrightable elements was substantially similar under the

15  extrinsic test.

16      The Court began by rejecting Astor-White's argument that the works are

17  substantially similar as to their plot, sequence of events, or themes. *Id.* at 6. It

18  explained that "[g]eneral plot ideas are not protected by copyright law," *id.* (citing

19  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)), and that any plot

20  similarities between the works are at too high a level of generality to be protectable,

21  *id.* The Court also noted that the treatment's sequence of events, "to the extent the

22  treatment contains a sequence of events …[,] has almost nothing in common with

23  the way the story of *Empire* develops." *Id.* And to the extent the works share any

24  themes, they are not protectable because they "arise naturally from the premise …

25  [and] the works develop those themes in very different ways." *Id.* (quotation

26  omitted).

27      The Court also rejected the contention that the works' characters are

28  substantially similar, explaining in detail the few similarities (and the many

5

differences) between them.  *Id.* at 6-7.  Finally, it explained that the works' setting, mood, pace, and dialogue are not substantially similar.  "Given that both stories involve an entertainment mogul living a lavish lifestyle, any similarities in the settings naturally flow from that unprotected idea and therefore do not support a finding of substantial similarity for purposes of copyright law."  *Id.* at 7. "Similarly, that both works find inspiration for their mood and pacing in the prime-time soap operas of the 1980s flows naturally from the basic idea for the shows and is unprotected *scènes-à-faire*."  *Id.*  Finally, as Astor-White conceded, Dkt. 26 at 16, his treatment contains no dialogue, and there is no way "to find a substantial similarity between the two works based on that element."  FAC Order at 7.

c.  The Court concluded that any amendment would be futile, so the FAC should be dismissed with prejudice.  *Id.*

d.  After the Court's dismissal, Astor-White—who filed his original complaint and FAC *pro se* but subsequently retained counsel—appealed the Court's order.  The Ninth Circuit unanimously *affirmed* this Court's judgment that the complaint failed to state a claim, agreeing with this Court that the FAC failed to adequately allege *both* actual copying *and* substantial similarity.  Dkt. 41 ¶ 2.  A two-judge majority concluded, however, that Astor-White, with the aid of counsel, should have the opportunity to amend the complaint.  *Id.* ¶ 3.

2.  Astor-White filed his SAC on October 22, 2018.  Dkt. 49, 50-1.  The SAC was largely identical to the FAC, and included few new allegations.  Defendants moved to dismiss the SAC on November 12, 2018, Dkt. 56, and the Court granted that motion on March 6, 2019.  Dkt. 66.

a.  In its approximately two-page order, the Court found that although drafted with the aid of counsel, "the [SAC's] allegations are remarkably similar to those [in the FAC] that both this Court and the Ninth Circuit previously concluded had failed to state a viable claim for copyright infringement."  *Id.* at 1-2.

b.  On access, it noted that "[a]s in the [FAC], the [SAC] still alleges that

[Astor-White] only shared his treatment with three individuals, including the actor Richard Roundtree," and although it "include[d] new allegations concerning connections between … Roundtree and [D]efendants, including that … Roundtree appeared on a different television program in which [*Empire* creator Lee] Daniels was involved in 2016, after the premiere of *Empire* in 2015, those new allegations do not plausibly allege that Defendants had access to *King Solomon* when they created *Empire*." *Id.* at 2 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

      b.  The Court also considered the SAC's three new alleged similarities between the two works—i.e., (1) "comparing 'King's youngest child' who 'gets caught-up in the fast life' and dates an older man with 'Lucious' youngest child, Hakeem,' who 'becomes consumed by fame and wealth, and dates an older woman;' (2) both works have characters who are the unexpected children of main characters; and (3) both works have important events, a party in *King Solomon* and a corporate board meeting in *Empire*, that are 'crashed' by characters with secrets or leverage over the main characters." *Id.* at 2.  It held that those "purported similarities, whether analyzed separately, collectively, or in combination with the alleged similarities" in the FAC "that both this Court and the Ninth Circuit concluded were insufficient to state a viable claim for copyright infringement, do not cure the deficiencies the Court identified in its order granting Defendants' Motion to Dismiss the [FAC]." *Id.*  The Court found that "[f]or the same reasons this Court concluded that the [FAC] failed to state a viable infringement claim against Defendants, the [SAC] also fails to state a viable claim for copyright infringement." *Id.* (the SAC "does not allege sufficient similarities between the protectable elements of the plot, themes,  dialogue, mood, setting, pace, characters, and sequence of events in the two works").  The Court concluded that "[n]o matter how 'groundbreaking' Astor-White's idea for a prime-time soap opera-style television series depicting a wealthy black family may have been, that idea is not

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

itself protectable." *Id.* (citing *Berkic*, 761 F.2d at 1293).  Accordingly, the SAC was dismissed in its entirety.  Noting that Astor-White requested leave to amend, however, the Court granted the motion without prejudice, and granted leave to file a TAC.  Dkt. 66 at 2.

### D.   The TAC

On May 3, 2019, Astor-White filed his TAC, Dkts. 75, 76,[5] which is materially identical to the SAC.  It repeats, mostly verbatim,[6] the SAC's allegations on access and substantial similarity that this Court has already deemed insufficient as a matter of law.  *See* Dkt. 66.  It contains just eight new paragraphs, but those paragraphs contain no new factual allegations regarding access or substantial similarity:[7]

*Access*.  The TAC's access allegations are identical to those contained in the SAC.  *See* TAC ¶¶ 22-43.  The only new statement in the TAC concerning access is an attempt to "reserve[] the right[] to explore" potential theories of access "during discovery."  *Id.* ¶ 29.  Specifically, the TAC reserves the right to seek discovery on who "received and transported" the copy of *King Solomon* that was allegedly faxed to Roundtree when he was staying at an Oakland, California hotel.  *Id.*

***Similarities between* King Solomon *and* Empire.**  All of the alleged similarities between the two works that are identified in the TAC were previously identified in the deficient SAC.  The TAC's only *new* allegations either (1)

---

[5] Citations to the TAC refer to Astor-White's corrected TAC. Dkt. 76.  Although Astor-White stated that he submitted a corrected TAC to "correct the numbers pertaining to the paragraphs in the [TAC]," Dkt. 77, the corrected TAC includes additional revisions that were not disclosed in his notice of errata, *e.g.* TAC ¶¶ 2, 14, 19 n.2.

[6] The TAC includes a handful of minor edits to the paragraphs that were previously included in the SAC, none of which alter their substance.  *See* TAC ¶¶ 1-2, 10-11, 13, 15-16, 18-20, 38-39, 43, 49, 53.

[7] Astor-White appears to have bolded some, but not all, of the new paragraphs in the TAC.  *See, e.g.,* TAC ¶¶ 14, 17, 21, 29, 44, 46, 48.  For the Court's convenience, Defendants have attached a redline comparing the TAC to the SAC.  *See* McNally Declaration, Exhibit ("Ex.") 1.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

constitute legal argument and conclusions, (2) repeat allegations from the FAC and SAC that the Court already rejected as deficient, or (3) are untethered to any element of the extrinsic test, which is the applicable test for substantial similarity here, *see Rentmeester*, 883 F.3d at 1118:

- *Legal argument and conclusion.*  The TAC contains new paragraphs that assert legal arguments or conclusions, but do not contain any factual allegations.  *See id.* ¶ 14 (asserting the legal conclusion that Astor-White "has demonstrated by listing … numerous and significant 'striking similarities' … that such 'striking similarities' are of the kind that can only be explained by copying, rather than by coincidence, independent creation or any other prior source"); *id.* ¶ 17 (asserting several legal conclusions, including that Astor-White "is confident that pursuant to the 'Two-Part-Test,' either the 'Extrinsic Test' and especially the 'Intrinsic Test,' whereby the ordinary, reasonable audience, would find the two works [are] substantially and 'Strikingly Similar,' in total concept, look and feel, as initially, uniquely described, in the treatment *King Solomon*"); *id.* ¶ 21 (alleging that the characters in *King Solomon* are "unique and are the product of the mind of [Astor-White]" and "protected under 'the story being told' aspect of copyright law").

- *Repetition of allegations previously contained in the deficient FAC and SAC.*  One new paragraph in the TAC repeats allegations of similarities between the two works that were previously contained in the FAC and SAC.  *See id.* ¶ 21 (repeating the alleged similarities in the "family structure[s]" of *King Solomon* and *Empire*); *compare* SAC ¶¶ 13, 17-18.[8]

- *Allegations untethered to any element of the extrinsic test.*  Finally, the

---

[8] The TAC actually alleges the families in *King Solomon* and Empire are **less** similar than the FAC and SAC alleged.  *See* TAC ¶ 21. (acknowledging that "[t]he third female adult child [in *King Solomon*] does not relate as much to" any *Empire* character).

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

TAC discusses statements by *Empire*'s creators that William Shakespeare's *King Lear* was the inspiration for *Empire*, TAC ¶¶ 44-46, and claims those statements are "a major stretch," *id.* ¶ 45.  It also suggests that the intended audiences for the two works "are identical"— *viz*, "'urban hip-hop' music enthusiasts, detailing stories depicting the inner workings of the billion-dollar record business." *Id.* ¶ 48.  None of these allegations relates to any element of the extrinsic test.  *See Rentmeester*, 883 F.3d at 1118.

Moreover, it goes without saying that the TAC cannot alter the works themselves—Astor-White attaches the same *King Solomon* treatment to the TAC that he attached to his three prior complaints, *see* TAC, Ex. A, and *Empire* is still *Empire*.

As should already be obvious, and as explained in more detail directly below, the TAC does not cure the deficiencies identified by the Court in its dismissals of Astor-White's previous complaints.

## III.   ASTOR-WHITE FAILS TO STATE A COPYRIGHT CLAIM

To survive this motion, Astor-White must plausibly allege that Defendants (i) actually copied *King Solomon*, and (ii) illicitly copied (or unlawfully appropriated) *King Solomon*'s protectable elements.[9]  To prove actual copying, Astor-White can either plausibly allege a "reasonable possibility" that Defendants had access to his work and that the works are sufficiently similar to be probative of copying, *Art Attacks Ink*, 581 F.3d at 1143, or that the works are so "strikingly similar" that they "give rise to a permissible inference of copying," *Baxter*, 812 F.2d at 423.

Astor-White's infringement claim must be dismissed because he cannot make either of these required showings.  The TAC does not adequately allege that

---

[9] For purposes of this motion only, Defendants assume that Astor-White owns a valid copyright in *King Solomon*.  *See Seven Arts*, 733 F.3d at 1254 (plaintiff must establish ownership to state a copyright infringement claim).

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

Defendants had access to *King Solomon*—its allegations of access are materially identical to those in the FAC and SAC, which this Court found (and the Ninth Circuit agreed when it affirmed the dismissal of the FAC) failed to allege access. Nor does the TAC adequately allege any similarity so striking that a reasonable juror could only conclude that Defendants copied Astor-White's work.

This failure to allege copying alone suffices to require dismissal with prejudice, but such dismissal is independently required because the TAC also fails adequately to allege that the protectable elements of *King Solomon* and *Empire* are substantially similar. The TAC adds nothing material to the SAC's allegations that the Ninth Circuit already held inadequate, and the TAC in any event cannot alter the content of the works themselves, which this Court has already found to fail the substantial-similarity test. The motion to dismiss should be granted, with prejudice.

### A. The TAC's New Allegations Do Not Plausibly Allege that Defendants Actually Copied *King Solomon*.

Astor-White principally attempts to satisfy the actual copying element of copyright infringement by alleging that Defendants had access to his work. "To prove access, a plaintiff must show a ***reasonable possibility***, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink*, 581 F.3d at 1143 (emphasis added). Like the prior complaints, the TAC does not allege direct evidence of access or evidence that the work was widely circulated, so Astor-White can allege access only by showing a non-speculative "chain of events linking [his] work and the defendant[s'] access." *Id.*

The Court held that the FAC and SAC failed to satisfy this standard. FAC Order at 5, SAC Order at 2. In dismissing the FAC, the Court found that Astor-White only "allege[d] that he provided his treatment to … three individuals, none of whom are alleged to have been involved in the creation of *Empire* or to otherwise have any relationship with Defendants," and concluding that the FAC contained no "facts supporting even an inference that Defendants had direct access to his

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

treatment." FAC Order at 5; *id.* at 7. The Ninth Circuit affirmed that determination. Dkt. 41 ¶ 2. The SAC's allegations of access were equally deficient. The Court found that although the SAC "include[d] new allegations concerning connections between … Roundtree and [D]efendants," the additional allegations did "not plausibly allege that Defendants had access to *King Solomon* when they created *Empire*." SAC Order at 2 (citing *Twombly*, 550 U.S. at 556). The TAC, therefore, cannot plausibly allege access unless it includes materially different allegations of access than the SAC.

Unsurprisingly, it does not. In fact, the TAC contains **no** additional factual allegations of access. TAC ¶¶ 22-33. The only new "allegation" regarding access is its attempt to "reserve[]" Astor-White's "rights to explore who received and transported [the] fax [of *King Solomon*] at the Waterfront Plaza Hotel to … Roundtree during discovery, as it relates to more public and/or private access." TAC ¶ 29. This is plainly insufficient because in evaluating this motion, the Court is limited to those facts alleged within "the four corners of the complaint." *Americopters, LLC v. FAA*, 411 F.3d 726, 732 n.4 (9th Cir. 2006); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."). Astor-White cannot "plausibly" allege access by speculating about what facts he may uncover in discovery regarding the identity and actions of individuals who worked at the hotel nearly 12 years ago. *See* TAC ¶¶ 26-27; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And because his actual factual allegations are identical to the deficient allegations in the SAC, they are implausible as a matter of law. *See* Dkt. 66 at 2.

Astor-White's failure to adequately allege that Defendants had access to *King Solomon* means the Court must dismiss the TAC for failure to allege actual copying unless he can show that *King Solomon* and *Empire* are "strikingly similar," a standard requiring him to show that *Empire* "could not possibly have been the

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

1   result of independent creation." *See Seals-McClellan v. Dreamworks, Inc.*, 120 F.

2   App'x 3, 4 (9th Cir. 2004) (explaining standard for striking similarity); *accord*

3   *Nimmer on Copyright* § 13.02[B] (2015) (striking similarity standard satisfied when

4   "independent creation" is "virtually impossible"); *see also* Dkt. 56 at 14

5   (identifying cases meeting the extremely high threshold for striking similarity).

6          The TAC, however, affirmatively refutes any such inference.  After all, it

7   notes that *Empire*'s creators credit *King Lear*—in which an aging King must decide

8   which of his three daughters will inherit his kingdom—as the inspiration for their

9   series.  *See* TAC, Ex. P (noting that *Empire* creator Strong wanted to make "*King*

10  *Lear* in the world of hip-hop"); *id.* ¶¶ 44-46.  Astor-White asserts that this

11  explanation of *Empire*'s creation is a "major stretch," *id*. ¶ 45, but the fact *Empire*'s

12  creators have offered an explanation for the work's creation that is at least plausible

13  and independent of *King Solomon* precludes any conclusion that the two works

14  "could not possibly have been the result of independent creation." *Seals-*

15  *McClellan*, 120 F. App'x at 4.[10]

16          In any event, separate and apart from the allegations in the TAC that the

17  creators of *Empire* have attributed Shakespeare's *King Lear* as the source of their

18  inspiration for their series, the TAC does not include any allegations of striking

19  similarity—indeed, it includes no independent allegations of striking similarity at

20  all.  Rather, the TAC alleges that the protectable elements of the two works are

21  substantially similar—a standard relevant to the illicit copying element of copyright

22  infringement, *see infra* at 14-15—and that this substantial similarity is so great as to

23  amount to striking similarity sufficient to prove access.  But as explained directly

24  below, Astor-White cannot even establish that the works' protectable elements are

25  ─────────────────────
    [10] Notably, *King Solomon* does not share many of the similarities that *Empire* and
26  *King Lear* have in common.  *Empire* and *King Lear* both address a  patriarch
    deciding which of his three children will be his heir.  FAC Order at 2; TAC ¶ 45.
27  *King Solomon* contains no similar storyline about succession.  *See, e.g.*, FAC Order
    at 2 (*King Solomon* is about "the billion dollar record business, through the eyes of
28  a wealthy black family, struggling to balance family and business"); TAC Ex. A.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

1   substantially similar.  Certainly, he comes nowhere close to showing that the works

2   are so *strikingly* similar (*i.e.*, that there is a heightened degree of substantial

3   similarity) that it is "virtually impossible" that Defendants created *Empire*

4   independently, as this Court has already concluded.  *See* FAC Order at 5

5   ("[W]hatever similarities may exist between the two works are not so 'striking' as

6   to create a reasonable inference of copying to satisfy the access requirement.").

7   And Astor-White's failure to allege either access or striking similarity means that

8   his complaint must be dismissed for failure to plausibly allege that Defendants

9   actually copied his work.

10
11
   ### B.   The TAC's New Allegations Do Not Plausibly Allege That *King Solomon* Are Substantially Similar.

12   The TAC must also be dismissed because it fails to allege that Defendants

13   *unlawfully* copied *King Solomon*, *i.e.*, that the two works' protectable elements are

14   substantially similar.  This Court already concluded as a matter of law—based on a

15   review of the works themselves—that *King Solomon* and *Empire* are not

16   substantially similar in protectable expression.  FAC Order at 5-8; SAC Order at 1-

17   2; *see also* Dkt. 41 ¶ 2.  And the TAC's few new allegations do not overcome the

18   prior complaints' failings.

19   As explained earlier, the Ninth Circuit's "extrinsic test" for substantial

20   similarity—which can be determined by courts as a matter of law—requires the

21   court to "assess[] the objective similarities of the two works, focusing only on the

22   protectable elements of the plaintiff's expression," *Rentmeester*, 883 F.3d at 1118,

23   and to "filter out and disregard the non-protectable elements" such as ideas,

24   concepts, and *scènes-à-faire*, when considering substantial similarity, *Cavalier*, 297

25   F.3d at 822; *see supra* at 5-6.  Notably, this extrinsic analysis focuses on "***the works***

26   ***themselves***," *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072,

27   1075 (9th Cir. 2006) (emphasis added), rather than a party's self-serving

28   characterizations of the works.  *See* FAC Order at 5-8.  And when the works are

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

before the court on the pleadings—for example, because they were attached to or incorporated in the complaint—the court can compare the works at the motion-to-dismiss stage and dismiss the complaint if the works are not substantially similar as a matter of law.  *See, e.g.*, *Rentmeester*, 883 F.3d at 1118; *Esplanade Prods., Inc. v. Walt Disney Co*, 2019 WL 1787533, at *2 (9th Cir. Apr. 24, 2019) (affirming dismissal of copyright infringement claim).  "When a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, the legal effect of the works are determined ***by the works themselves rather than by allegations in the complaint***."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002) (emphasis added); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (rejecting complaint's list of alleged similarities between plaintiff's and defendants' works as "inherently subjective and unreliable"); *Esplanade Prods*, 2019 WL 1787533, at *1 (quoting *Rentmeester*, 883 F.3d at 1118  ("[t]he extrinsic test assesses ***the objective similarities of the two works***") (emphasis added).

This Court already undertook this analysis in ruling on Defendants' previous motions to dismiss, and concluded that the works "are not substantially similar in protectable expression" as a matter of law.  FAC Order at 7; SAC Order at 2 n.1 (incorporating the FAC Order's analysis).  Obviously, nothing in the TAC alters the substance of the works themselves, and thus cannot possibly alter this Court's previous conclusions.

Even setting aside the works themselves, moreover, the TAC's few new allegations add nothing material to the SAC.  And because this Court has already concluded that the SAC fails plausibly to allege substantial similarity as a matter of law, so to must the TAC.

As explained, several of the TAC's new allegations simply make legal argument and assert legal conclusions, *see supra* at 9, so those allegations must not be considered on a motion to dismiss.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699

(9th Cir. 1998) ("conclusory allegations of law" must be disregarded on a motion to dismiss); *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir. 1996) (same). The TAC's new paragraph repeating alleged similarities between the families in *King Solomon* and *Empire* that Astor-White has previously alleged, *see supra* at 8, is likewise irrelevant because the Court has already rejected any substantial similarity between the works' characters.  *See* FAC Order at 6-7 (noting that "[a]s with other aspects of the substantial similarity analysis, [Astor-White]'s underdeveloped treatment lacks detail about the characters" and finding no substantial similarity between the families in the two works); SAC Order at 2 (holding that Astor-White failed to allege substantial similarity between the works' characters, as well as all other elements of the extrinsic test); *see Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930) ("[T]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly.").[11]  And the only other new paragraphs in the TAC—those addressing statements by *Empire*'s creators that *King Lear* was the inspiration for the show and an allegation that *King Solomon* and *Empire* have a similar target audience, TAC ¶¶ 44-46, 48—have nothing to do with any element of the extrinsic test, which does not take into account a work's underlying inspiration or target audience because those are not elements of the works themselves.  *See Rentmeester*, 883 F.3d at 1118.

* * *

This Court has already rejected Astor-White's FAC and SAC as insufficient, FAC Order at 7, SAC Order at 2, *see also* Dkt. 41 ¶ 2, and the TAC does not materially add to the SAC's allegations.  The TAC should be dismissed for two

---

[11] Although not expressly raised in the TAC, there can be no claim here that *Empire* infringes Astor-White's right to prepare derivative works because *King Solomon* and *Empire* are not substantially similar as a matter of law.  *See Berkic v. Crichton,* 761 F.2d 1289, 1291 (9th Cir. 1985) ("If the plaintiff cannot show a substantial similarity between the defendants' work and his own, he cannot prevail on a claim for alleged violations of his right to prepare derivative works.").

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO

1    basic reasons.  First, the TAC fails to allege the actual copying element of a

2    copyright infringement claim because there is no plausible allegation of access, nor

3    are the works so strikingly similar that the only plausible inference is that

4    Defendants copied *King Solomon* from *Empire*.  Second, the TAC fails to

5    adequately allege the unlawful copying element because the works themselves are

6    not substantially similar, and even setting aside the works themselves, the TAC

7    contains no allegations that the works are substantially similar in protected

8    expression.  And given Astor-White's inability to plausibly allege either element

9    despite multiple opportunities to do so, dismissal should be with prejudice.  *See*

10    *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming dismissal where

11    "the district court had given plaintiffs three opportunities to amend the complaint in

12    accord with the judge's instructions, but the third amended complaint restated the

13    prior ones without curing their deficiencies").

14    **IV.**    **CONCLUSION**

15         The Court should dismiss Plaintiff's TAC in its entirety with prejudice.

16    Dated:  May 17, 2019         O'MELVENY & MYERS LLP

17            By:    /s/ Daniel M. Petrocelli

18               Daniel M. Petrocelli

19

20            *Attorneys for Defendants Daniel*

21            *William Strong, Lee Daniels, Imagine*
*Television, LLC, and Twentieth Century*
*Fox Film Corporation*

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO. 15-CV-06326 PA-RAO